ANDERSON PRODUCING
INC., Petitioner,

v.

KOCH OIL COMPANY, Respondent.

No. 94–1198.

Supreme Court of Texas.

Argued Sept. 27, 1995.

Decided May 10, 1996.

Rehearing Overruled Oct. 18, 1996.

Charles A. Sharman, John M. Zukowski, Houston, for petitioner.

Thomas A. Loftus, III, Wichita, KS, Susan C. Stevenson, Houston, Cathy Ervin, Tye G. Darland, Wichita, KS, for respondent.

GONZALEZ, Justice, delivered the opinion of the Court, in which CORNYN, ENOCH, BAKER and ABBOTT, Justices, join.

Subject to certain exceptions, Texas Disciplinary Rule of Professional Conduct 3.08 prohibits an attorney from representing a party in an adjudicatory proceeding if the attorney knows or believes that he or she may be a witness at trial. TEX.DISCIPLINARY R.PROF.CONDUCT 3.08 (1994), *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G app. (Vernon Supp.1996). Relying solely on this rule, respondent persuaded the court of appeals to reverse the trial court's judgment for petitioner because the lawyer who represented petitioner during pretrial proceedings later testified as an expert and fact witness for petitioner at trial. 883 S.W.2d 784. Although the court of appeals disqualified the testifying attorney from representing petitioner on remand, it did not specifically hold that the attorney could not testify, nor did it consider whether the other members of the attorney's firm were disqualified. Only petitioner applied to this Court for writ of error. Apparently relying on the Court's earlier pronouncements, both petitioner and respondent advance Rule 3.08 as the controlling standard for disqualification. Under this procedural posture, we hold that the testifying attorney appeared at trial solely as a witness, and thus did not violate Rule 3.08. We accordingly reverse the judgment of the court of appeals and remand the cause to that court to consider respondent's remaining points of error.

I

Petitioner Anderson Producing Company obtained a $120,000 judgment against John R. Watson and related entities (collectively "Watson") in August 1990 in an action arising from a mineral lease dispute. In an effort to collect that judgment, Anderson filed the present garnishment action against Koch Oil Company in November 1990. Based on its investigations, Anderson believed that Koch

was the principal purchaser of oil from leases operated by Watson, and therefore was indebted to him. K. Ray Campbell, an attorney with the Houston firm of Campbell, Zukowski & Bresenhan, represented Anderson in both the original action against Watson and the garnishment action against Koch.

Answering the writ of garnishment, Koch admitted a debt to Watson of $3967, which it paid to the registry of the court. Anderson claims, however, that Koch owed considerably more and conspired with Watson to avoid further payment. Specifically, Anderson contends that Watson executed sham transfers of his lease interests to entities under his control that were not liable on the Anderson judgment, and that Koch acquiesced in the fraudulent transfers by paying purchase proceeds to the sham transferees rather than to the court pursuant to the writ of garnishment.

Anderson claims that it learned of Koch's wrongdoing when Campbell took the deposition of Carla Rice, a Koch representative, in April 1991. Anderson amended its pleadings a month later to allege fraud and conspiracy against Koch, Watson, and Watson's transferees. At that point, according to Anderson, Campbell realized that he would be a necessary witness at trial because of his personal knowledge of Koch's actions regarding the writ of garnishment. Campbell did not personally represent Anderson at any subsequent court hearings or depositions, although he spoke once at a pretrial hearing in June 1991 in response to a question from the court regarding the location of Uhland, Texas. Campbell did, however, continue to participate in settlement negotiations, assist his partner, John Zukowski, with trial preparation, and sign pleadings. Campbell signed all the pleadings until Koch filed its motion to disqualify, discussed below, at which point Zukowski began signing the pleadings. This comports with Texas Rule of Civil Procedure 57, which merely requires that pleadings "be signed by at least one attorney of record." All pleadings filed by Anderson that are in-

cluded in the appellate record show both Campbell and Zukowski as attorneys of record.

In November 1992, three weeks before trial, Anderson identified Campbell as one of its expert witnesses in timely responses to the defendants' discovery requests.[1] A short time later Koch moved to disqualify Campbell and his law firm from representing Anderson, citing Texas Disciplinary Rule of Professional Conduct 3.08. Koch alternatively requested that Campbell be prohibited from testifying at trial on any matter other than attorneys' fees. Anderson responded that Campbell would serve only as a witness at trial, not as Anderson's attorney. After a hearing, the trial court denied Koch's motion to disqualify Campbell and his law firm.

Anderson's fraud and conspiracy claims were tried to a jury in December 1992, with Zukowski acting as Anderson's advocate at trial and Campbell appearing as its principal witness. Although Campbell testified about the factual background surrounding the writ of garnishment, the bulk of his testimony was expert in nature, explaining the numerous assignments, transfer orders, and division orders executed by and between Watson, his transferees, and Koch that had been obtained during discovery. Based on these documents and his knowledge of industry practices, Campbell concluded that Koch had accommodated Watson's efforts to avoid paying the Anderson judgment. Campbell ultimately testified that Koch showed Watson "a way to beat the system" by assigning his producing oil and gas properties to different entities.

Although Campbell did not act as Anderson's lawyer during trial, he sat at counsel table except during his testimony. Moreover, he spoke once in brief response to a question posed by Koch's attorney regarding documents, though he did so outside the presence of the jury.

The jury returned a verdict for Anderson, finding that Koch and Watson's transferees committed fraud and engaged in a conspiracy

1. This discovery, which was propounded by Koch's co-defendants, inquired only about expert

to commit fraud.[2] The jury assessed $164,360 in actual damages for the fraud, and separately assessed $200,000 in actual damages for the conspiracy. It also found that Koch wrongfully paid garnished funds, concluding that this conduct proximately caused $100,000 in actual damages. The jury also awarded punitive damages of $100,000 and additional attorneys' fees.[3]

After considering the parties' post-verdict motions, the trial court rendered judgment against Koch for $153,722 in actual damages, $100,000 in punitive damages, and $119,198 in attorneys' fees. Only Koch appealed to the court of appeals. Although it raised points there challenging the exemplary damages and attorneys fees, which that court did not reach, neither party challenges the amount of damages in this Court.

The court of appeals held that Campbell violated Rule 3.08 and that the trial court abused its discretion by failing to disqualify him. It did not consider, however, whether Campbell's firm should have been disqualified. Focusing only on the importance of Campbell's testimony, rather than the extent and effect of Campbell's advocacy at trial, the court concluded that the trial court's abuse of discretion likely caused the rendition of an improper judgment. After further concluding that legally sufficient evidence supported the jury's verdict, precluding rendition of judgment in Koch's favor, the court reversed the trial court's judgment based on Rule 3.08 and remanded the cause for a new trial. While the court disqualified Campbell from representing Anderson in the proceedings on remand, it is not clear whether it intended to prohibit him from testifying as a witness.

## II

The pre–1994 version of Texas Disciplinary Rule of Professional Conduct 3.08, which governs Campbell's conduct at the 1992 trial of this cause, provides as follows:

### Lawyer as Witness

(a) A lawyer shall not accept or continue employment in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;

(3) the testimony relates to the nature and value of legal services rendered in the case;

(4) the lawyer is a party to the action and is appearing pro se; or

(5) the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer shall not continue as an advocate in a pending adjudicatory proceeding if the lawyer believes that the lawyer will be compelled to furnish testimony that will be substantially adverse to the lawyer's client, unless the client consents after full disclosure.

(c) Without the client's informed consent, a lawyer may not act as advocate in an adjudicatory proceeding in which another lawyer in the lawyer's firm is prohibited by paragraphs (a) or (b) from serving as advocate. If the lawyer to be called as a witness could not also serve as an advocate under this Rule, that lawyer shall not take an active role before the tribunal in the presentation of the matter.

witnesses, not potential fact witnesses.

2. The claims against Watson were severed prior to trial due to his bankruptcy. Watson's transferees are not parties to this appeal.

3. The jury assessed the following attorneys' fees:
   A. Through Trial $1,000,000
   B. Appealed to the Court of Appeals $2,000,000
   C. Seeking Writ of Error to the Supreme Court $3,000,000
   D. Granting Writ to the Supreme Court $4,000,000

Tex.Disciplinary R.Prof.Conduct 3.08 (1989), *reprinted in* 777–778 S.W.2d (Texas Cases) XCIII–XCIV (1989). In 1994, Rule 3.08(a) was amended to prohibit "employment *as an advocate before a tribunal* in a contemplated or pending adjudicatory proceeding" Tex.Disciplinary R.Prof.Conduct 3.08(a) (1994), *reprinted in* 881 S.W.2d (Texas Cases) XXXVII (1994) (emphasis added). The remainder of Rule 3.08, and the accompanying comments, which are discussed below, were not changed.[4]

▇▇▇ The Texas Disciplinary Rules of Professional Conduct "establish the 'minimum standards of conduct below which no lawyer can fall without being subject to disciplinary action.' " *Spears v. Fourth Court of Appeals,* 797 S.W.2d 654, 656 (Tex.1990) (quoting TEX.DISCIPLINARY R.PROF.CONDUCT preamble ¶ 7 (1989)). Although Rule 3.08 was promulgated as a disciplinary standard, rather than a procedural disqualification standard, *see* TEX.DISCIPLINARY R.PROF.CONDUCT 3.08 cmt. 9 (1989), we have recognized that "the rule articulates considerations relevant to a procedural disqualification determination." *Ayres v. Canales,* 790 S.W.2d 554, 556 n. 2 (Tex.1990). We applied Rule 3.08 as the standard for disqualification in *Ayres,* noting as follows:

> Indeed, it would be injudicious for this court to employ a rule of disqualification that could not be reconciled with the Texas Rules of Professional Conduct. Accordingly, we will refer to the rule for guidance in determining whether the trial court abused its discretion in [granting the motion to disqualify].

*Id.* at 557 n. 2. In *Spears,* we again recognized that while the disciplinary rules do not necessarily set forth controlling standards for motions to disqualify, they provide relevant guidelines for such motions. *Spears,* 797 S.W.2d at 656. As in *Ayres,* we applied

the disciplinary rules to the disqualification dispute before the Court, noting that "[t]he parties have not offered any countervailing considerations as to why the disciplinary rules should not be ... employed in this proceeding." *Id.; see also Mauze v. Curry,* 861 S.W.2d 869, 870 (Tex.1993) (applying Rule 3.08 to motion to disqualify testifying counsel).[5]

Similarly in this case, all parties rely on Rule 3.08 as the controlling standard for Koch's motion to disqualify, and the court of appeals likewise based its decision on that rule. We disagree with Justice Owen that Koch proposed an alternative standard in the lower courts by citing *Warrilow v. Norrell,* 791 S.W.2d 515 (Tex.App.—Corpus Christi 1989, writ denied). The attorney in *Warrilow* testified as both a fact and an expert witness on behalf of his client, while also actively participating as an advocate at trial by questioning witnesses, addressing the court, and arguing to the jury. The appellate court properly held that the trial court abused its discretion by failing to disqualify the attorney based on this dual role, expressly basing its decision on Disciplinary Rules 5–101(B) and 5–102(A), the forerunners of current Rule 3.08. *See* 791 S.W.2d at 520 ("We find that the trial court abused its discretion by failing to disqualify attorney King, as mandated by DR 5–102(A)."). While the court discussed underlying policy considerations, including the confusion to the jury from an attorney testifying as a material witness and then vouching for his own credibility during final argument, *see* 791 S.W.2d at 522, the court did not depart from the Disciplinary Rules as its standard for decision.

Koch argues in this Court that Campbell improperly portrayed himself as an advocate *during* his testimony by revealing that he had represented Anderson during pretrial

4. The Comments to the Texas Disciplinary Rules of Professional Conduct were prepared by the Model Rules Committee of the State Bar of Texas and reviewed and amended by this Court in connection with our adoption of the Disciplinary Rules in 1989. Tex.Disciplinary R.Prof.Conduct 3.08 (1989), *reprinted in* 777–778 S.W.2d (Texas Cases) XCIV–XCVI (1989).

5. The dissent incorrectly argues that the Court applied an alternative standard in *Mauze.* After quoting the text of Rule 3.08, the Court in *Mauze* held as follows: "The [attorney's testimony] does not come within any of the five exceptions enumerated in Rule 3.08(a). Consequently, the trial judge abused his discretion when he denied Mauze's motion to disqualify counsel." 861 S.W.2d at 870.

matters, that he was the partner of Anderson's trial attorney, and that he had assisted in preparing the case for trial. By making this argument, however, Koch does not call for a departure from Rule 3.08, but rather contends that Campbell in effect acted as an advocate within the meaning of Rule 3.08, thus requiring its application. Notably, Koch's two reply points in this Court addressing the disqualification issue both expressly refer to Rule 3.08.[6]

Koch likewise relied solely on Rule 3.08 in the court of appeals. The subheading addressing this issue in Koch's brief to the court of appeals provides: "The Testimony of Mr. K. Ray Campbell, Attorney For Anderson, As Both A Fact And Expert Witness Violated Disciplinary Rule 3.08." In its argument under this subheading, Koch first quoted Rule 3.08, then argued that none of the rule's exceptions applied, and finally concluded that "[t]he foregoing demonstrates that Mr. Campbell's testimony violated the standards of Rule 3.08." We thus reject the dissent's contention that Koch has advocated some alternative standard.

Although Rule 3.08 was not promulgated as the controlling standard for disqualification proceedings, we have recognized that it articulates relevant considerations for such proceedings. While we do not exclude the possibility that we would apply a different standard under other appropriate circumstances,[7] we decline to do so here when it has not been urged by the parties, either in this Court or below. Accordingly, we will analyze the present case under the dictates of Rule 3.08.

### III

### A

■ Anderson argues that Rule 3.08 does not prohibit Campbell's conduct because he did not represent Anderson in an "adjudicatory proceeding" within the meaning of the rule. Anderson contends that Rule 3.08 only prohibits a testifying attorney from acting as an advocate before a tribunal, not from engaging in pretrial, out-of-court matters such as preparing and signing pleadings, planning trial strategy, and pursuing settlement negotiations. We agree.

■ Rule 3.08 is grounded principally on the belief that the finder of fact may become confused when one person acts as both advocate and witness. *See* TEX.DISCIPLINARY R.PROF.CONDUCT 3.08 cmt. 4 (1989); *Ayres,* 790 S.W.2d at 557 n. 4. "A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." TEX.DISCIPLINARY R.PROF.CONDUCT 3.08 cmt. 4 (1989). The rule reflects the concern that an opposing party may be handicapped in challenging the credibility of a testifying attorney. *See Ayres,* 790 S.W.2d at 557 n. 4 (citing Brown & Brown, *Disqualification of the Testifying Advocate—A Firm Rule?,* 57 N.C.L.REV. 597, 608–09 (1979)). These rationales simply do not apply when the testifying lawyer is merely performing out-of-court functions, such as drafting pleadings or assisting with pretrial strategy. As Comment 8 provides:

> This rule does not prohibit the lawyer who may or will be a witness from participating in the preparation of a matter for presentation to a tribunal. To minimize the possibility of unfair prejudice to an opposing party, however, the Rule prohibits any testifying lawyer who could not serve as an advocate from taking an active role before the tribunal in the presentation of the matter.

TEX.DISCIPLINARY R.PROF.CONDUCT 3.08 cmt. 8 (1989). Thus, Campbell did not violate Rule 3.08 by continuing to draft pleadings,

---

**6.** These reply points state as follows:

REPLY POINT ONE: THE COURT OF APPEALS CORRECTLY APPLIED RULE 3.08 OF THE TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT.

REPLY POINT TWO: THE COURT OF APPEALS CORRECTLY DETERMINED THAT RESPONDENT WAS PREJUDICED BY K. RAY CAMPBELL'S VIOLATION OF RULE 3.08.

**7.** The dissent offers several reasons about why Rule 3.08 should not be the controlling standard, some of which we find intriguing.

engaging in settlement negotiations, or assisting with trial strategy after learning that he would probably be called as a witness at trial for Anderson.

As noted, Rule 3.08 was amended in 1994 to expressly apply only to "employment *as an advocate before a tribunal* in a contemplated or pending adjudicatory proceeding" (emphasis added). Based on our discussion above, it is clear that this amendment served not to alter the substantive scope of the rule, but rather to clarify the interpretation properly inferred from the existing comments and rationale underlying the rule.

### B

■ Koch also argues that Campbell violated Rule 3.08 by sitting at counsel table when he was not testifying. As stated, Rule 3.08 is based on the rationale that a jury may misinterpret testimony given by an advocate for one of the parties. Koch apparently contends that the jury could have perceived Campbell as an advocate merely from Campbell's presence at the counsel table with Zukowski. Anderson responds that Campbell was not sitting at counsel table as an attorney, but as Anderson's principal trial witness.

We do not decide whether Campbell violated Rule 3.08 merely by sitting at counsel table, because Koch waived this complaint by failing to object at trial. We disagree with Justice Owen's contention that Koch was relieved from its obligation to object because the trial court had overruled its pretrial motion to disqualify Campbell. As noted earlier, Anderson responded to Koch's pretrial disqualification motion by representing to the trial court that Campbell would not act as trial counsel. If Koch believed that Campbell was violating that representation merely by sitting at counsel table, it should have objected. Moreover, Koch made no effort to exclude Campbell from the courtroom by placing him under the Rule. Anderson does not make the argument advanced by Justice Owen, that Campbell, as an attorney of record, was exempt from the Rule. Rather, Anderson's counsel stated at oral argument that Campbell sat at counsel table because he was Anderson's "main witness," and that "[h]e was there to in fact keep me informed

in regard to the paperwork, things of that nature." Anderson has never advocated whether it believes Campbell would have been exempt from the Rule had it been invoked by Koch. *See* TEX.R.CIV.P. 267; TEX. R.CIV.EVID. 614. On this record, Koch cannot now complain that it was prejudiced by Campbell's presence at counsel table.

### C

■ Koch further complains that Campbell identified himself as Anderson's attorney while he was testifying. On direct examination, Campbell acknowledged that he had represented Anderson in the underlying action against Watson and that he filed the garnishment action against Koch. Justice Owen relies heavily on this point, highlighting portions of Campbell's testimony and contending that he acted as an "advocate" from the witness stand.

There is no dispute that Campbell was Anderson's principal witness, and that it was through his testimony that Koch's alleged wrongdoing was presented to the jury. This is not surprising, as Campbell had more intimate knowledge of the facts and was more familiar than anyone else with the documents relied on by Anderson. But Campbell did not take an active part in the trial proceedings except as a witness, and his occupation as an attorney did not ipso facto transform him into Anderson's trial counsel.

■ Further, it was necessary for Campbell to reveal to the jury that he had acted as Anderson's attorney to establish the predicate for his testimony. He clarified his role on cross-examination, however. When asked by defendant's counsel whether he was appearing as an expert witness or as legal counsel for Anderson, Campbell responded that he was "testifying as expert witness for Mr. Anderson in this case.... I'm a lawyer, but I'm not the lawyer in this case trying this lawsuit. I'm the expert witness in this case." Because Rule 3.08 does not prohibit testifying attorneys from assisting in pretrial matters, Campbell did not violate Rule 3.08 under these facts by testifying that he had previously acted as Anderson's counsel in the garnishment action.

## D

■ Koch also argues that Anderson did not promptly notify Koch after Campbell learned that he would likely be a witness at trial. Campbell reached this conclusion by May 1991, and yet Anderson did not inform Koch until shortly before trial in November 1992, when it responded to discovery requests propounded by Koch's co-defendants.

It is undisputed, however, that Anderson's discovery answers were timely and that defendants did not propound earlier discovery seeking the identity of witnesses. If Campbell's conduct had violated the general prohibition of Rule 3.08, then his failure to notify Koch sooner would probably prevent him from qualifying under the hardship exception to the rule, which requires the testifying lawyer to "promptly notif[y] opposing counsel that the lawyer expects to testify in the matter." TEX.DISCIPLINARY R.PROF.CONDUCT 3.08(a)(5) (1994). As discussed above, however, Rule 3.08 does not prohibit Campbell's conduct. Moreover, the trial court afforded Koch an opportunity to depose Campbell, and Koch does not contend that it suffered prejudice from any late notification.

## IV

■ Koch suggests in its brief to this Court that Campbell's firm is also disqualified from representing Anderson. The court of appeals did not address this issue, presumably because Koch did not assign it as a separate point of error in that court. Koch only briefly referred to this issue in its court of appeals brief, inserting a single contention at the end of the argument section that "[t]he trial court should have disqualified Mr. Campbell and his law firm from continuing to represent Anderson in the action." Koch included no argument as to why the firm, as opposed to Campbell personally, should be disqualified.

Even assuming that Koch adequately preserved this issue in the court of appeals, it has not properly raised the argument in this Court. Koch's only reference to this issue is in its reply brief, where it argues that "[t]he Court of Appeals correctly held that the trial court should have disqualified Mr. Campbell and his law firm from continuing to represent Anderson in the action." This mischaracterization of the court of appeals' holding, without more, is not sufficient to preserve error with regard to disqualification of Campbell's firm.

■ Moreover, Rule 3.08 does not bar Zukowski's representation of Anderson at trial. Rule 3.08(c) provides that *"[w]ithout the client's informed consent,* a lawyer may not act as advocate in an adjudicatory proceeding in which another lawyer in the lawyer's firm is prohibited by paragraphs (a) and (b) from serving as advocate." (Emphasis added.) Comment 8 confirms that "[e]ven in those situations [in which a testifying lawyer is disqualified], however, another lawyer in the testifying lawyer's firm may act as an advocate, provided the client's informed consent is obtained." These provisions make it clear that, with Anderson's informed consent, Campbell's partner was not prohibited from representing Anderson at trial. *See Ayres,* 790 S.W.2d at 558. Indeed, Koch's counsel essentially conceded this point at oral argument. When asked whether he could prevent Zukowski from representing Anderson on remand, Koch's counsel responded, "I don't believe so, your honor." Further, Koch lacks standing to challenge the adequacy of consent, which is "a matter to be resolved between lawyer and client or in a subsequent disciplinary proceeding." TEX.DISCIPLINARY R.PROF.CONDUCT 3.08 cmt. 10 (1989).

## V

### A

Both dissenting opinions base their arguments for disqualification largely on the fact that Campbell, despite offering expert testimony at trial, was being compensated as an attorney, through his firm, on a contingency basis dependent on Anderson's success in the litigation. Campbell testified to this fee arrangement at trial, and Anderson's counsel confirmed it at oral argument. Texas Disciplinary Rule of Professional Conduct 3.04(b) forbids a lawyer from "pay[ing], offer[ing] to pay, or acquiesc[ing] in the offer or payment of compensation to a witness or other entity contingent upon the content of the testimony

of the witness or the outcome of the case." Thus, it certainly could be argued that Campbell and his firm violated this rule by basing Anderson's case on Campbell's testimony, where the members of the firm (including Campbell) were being compensated based on Anderson's success. Koch, however, did not raise this issue in the trial court or on appeal. We decline to articulate a standard for disqualification on unassigned error, and we furthermore express no opinion regarding whether Campbell or his firm violated Rule 3.04(b).

## B

Justice Owen views Campbell's conduct as an ethical breach that, unless condemned by this Court, will reinforce the public's negative perception of lawyers. Regrettably, we agree that public dissatisfaction with the legal profession and, indeed, with our entire legal system is unacceptably high. *See, e.g., 20–20: The Trouble with Lawyers* (ABC News television broadcast, Jan. 2, 1996). Nevertheless, we seriously doubt whether the problem of "lawyers testifying in court" contributes to any measurable extent to our public image. We believe that frequent expense and delay, occasional erratic results, and over-legalization of daily affairs of life are at the root of the popular discontent with the civil justice system. This Court is addressing many of these problems through our regulation of the legal profession, our pending amendments to the Texas Rules of Civil and Appellate Procedure, and various ongoing task forces and committees, such as the legislatively mandated Judicial Efficiency Commission. We simply disagree with Justice Owen's apparent conclusion that disqualifying Campbell and his firm in this case will cure the lack of public confidence in the legal profession.

## VI

One final evidentiary issue remains. Campbell testified that Koch showed Watson "a way to beat the system." Koch argues that the trial court erred in admitting this testimony over Koch's timely objection, contending that Campbell failed to demonstrate personal knowledge supporting the testimo-

ny. *See* TEX.R.CIV.EVID. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter."). The record reflects that Campbell's testimony was based on his review of the documents executed by Watson, Koch, and the transferees, and that Koch had ample opportunity to cross-examine Campbell regarding the basis of his conclusion. Under these circumstances, the trial court did not abuse its discretion in failing to strike the testimony.

For the foregoing reasons, the judgment of the court of appeals is reversed and the cause is remanded to that court for consideration of Koch's remaining points of error.

PHILLIPS, Chief Justice, joined by SPECTOR, Justice, dissenting.

I respectfully dissent. The jury was informed during trial that K. Ray Campbell uncovered the facts, conceived the legal theories, filed the lawsuit, and conducted most of the discovery. They also were informed by Campbell himself that he retained, through his law firm, a substantial financial stake in the outcome of the case. Under these circumstances, any reasonable jury was likely to view Campbell as both a witness and an advocate, triggering the policy concerns that Rule 3.08 is intended to protect. I would therefore affirm the judgment of the court of appeals with specific instructions that Campbell not be allowed to testify on remand as long as he retains any continuing fee interest in the case, either by contingency or post-withdrawal hourly billings.

As the Court notes, Rule 3.08 was promulgated as a disciplinary standard, not a disqualification standard. *See* TEX.DISCIPLINARY R.PROF.CONDUCT 3.08 cmt. 9 (1989). It nonetheless provides useful guidelines in deciding disqualification issues, *see Ayres v. Canales,* 790 S.W.2d 554, 556 n. 2 (Tex.1990), and we have in practice employed it and other disciplinary rules as the controlling standard in several disqualification cases. *See Mauze v. Curry,* 861 S.W.2d 869, 870 (Tex.1993); *Spears v. Fourth Court of Appeals,* 797 S.W.2d 654, 656 (Tex.1990); *Ayres,* 790 S.W.2d at 556. The Court concludes that we should not depart from Rule 3.08 in this

case, as neither party has ever urged any alternative standard. Justice Owen, in her dissenting opinion, contends that we should craft a more rigorous disqualification standard, but that Campbell should be disqualified in any event because he also violated Rule 3.08. Because neither party urges that any other standard be used, and because I agree that Campbell violated Rule 3.08, I would not on this record reach the issue of whether a different standard should be applied here or in future cases.

Rule 3.08 is intended to prevent the confusion to a jury that could result when an attorney appears at trial as both a witness and an advocate for a party. See TEX.DISCIPLINARY R.PROF.CONDUCT 3.08 cmt. 4 (1989); *Ayres,* 790 S.W.2d at 557 n. 4. "A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." Rule 3.08, cmt. 4. Also, the jury may grant undue weight to the attorney's testimony, see *Warrilow v. Norrell,* 791 S.W.2d 515, 522–23 (Tex.App.—Corpus Christi 1989, writ denied), and the opposing party may be hampered in challenging the attorney's credibility. See *Ayres,* 790 S.W.2d at 557 n. 4. Under the facts of this case, as carefully marshaled by Justice Owen in Part II of her dissenting opinion, Campbell's disclaimer that he was only the "expert witness" and "not the lawyer in this case trying this lawsuit" did little, if anything, to clarify his role.

I recognize that Rule 3.08, as interpreted under the official comments, does not prohibit a testifying attorney from assisting in preparation of a case for trial. See TEX.DISCIPLINARY R.PROF.CONDUCT 3.08 cmt. 8 (1989). Thus, Campbell's extensive role in preparing and prosecuting this case prior to trial did not, in my opinion, render his testimony improper. What the rule will not permit, however, is Campbell's failure either in theory or in practice to sever his role as de facto attorney for Anderson when the trial commenced. The jury, which reasonably would have viewed Campbell as Anderson's legal representative in the litigation, was allowed

to hear Campbell's view of the case from the witness stand in the guise of factual and expert testimony. Allowing an attorney to ascend the witness chair to expound the controlling testimony for the client's case blurs the necessary distinction between advocate and witness on which our adversary system depends. See *Warrilow,* 791 S.W.2d at 523. To this extent, I am in full agreement with Justice Owen that the trial court should have prohibited Campbell from testifying as long as he retained, either individually or through his firm, any continuing fee interest in the case.

I disagree, however, with other rationales offered by Justice Owen for this result. For example, she argues that the testimony of an attorney who has worked on pretrial matters is likely to be "tainted" by the attorney's "overall knowledge" of the case. Surely, however, a witness cannot be disqualified for having too much knowledge about the subject of the witness' testimony. Thus, it was not Campbell's intimate knowledge of Koch's actions that rendered Campbell's testimony improper, but rather the overall impression presented to the finder of fact that he remained an advocate as he testified. Notably, Rule 3.08 specifically allows a testifying attorney to participate in pretrial matters. As we noted in *Ayres,* "it would be injudicious for this court to employ a rule of disqualification that could not be reconciled with the Texas Rules of Professional Conduct." 790 S.W.2d at 557 n. 2.

Justice Owen also argues that disqualification is necessary to avoid the appearance of impropriety and to restore the public's confidence in the legal system. I agree with the Court, however, that the public's current negative perception of lawyers stems from sources having little to do with the advocate/witness rule. Moreover, Justice Owen's focus on the mere appearance of impropriety, while laudable, ignores our previous pronouncement that a lawyer should not be disqualified under Rule 3.08 unless the complaining party can demonstrate actual prejudice. *Ayres,* 790 S.W.2d at 558 (citing Rule 3.08 cmt. 10). The requirement of actual prejudice is necessary to prevent the rule from being misused as a

tactical weapon to deprive opposing parties of the counsel of their choice. Rule 3.08 cmt. 10.

To avoid injustice, Rule 3.08 creates an exception when "the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and disqualification of the lawyer would work substantial hardship on the client." Rule 3.08(a)(5). Anderson, however, does not rely on this exception. While Campbell was Anderson's principal trial witness, Anderson does not effectively demonstrate that his testimony could not have been provided from other sources. Moreover, it is apparent that Anderson did not satisfy the prompt notification requirement of Rule 3.08(a)(5), as it delayed over a year in notifying Koch that Campbell would be a witness.

For the foregoing reasons, I would affirm the judgment of the court of appeals with specific instructions that Campbell not be allowed to testify on remand as long as Campbell retains a fee interest, directly or indirectly, in the case.

OWEN, Justice, filed a dissenting opinion in which HECHT, Justice, joins.

I respectfully dissent. Campbell should have been disqualified or prohibited from testifying on any matter other than attorney's fees. The Court chooses to apply a narrow, strict interpretation of Rule 3.08 of the Disciplinary Rules as the standard in this case. The Texas Disciplinary Rules of Professional Conduct are *minimum* standards of conduct. They are not the sole measure in determining if an attorney should be disqualified or precluded from testifying. Even were Rule 3.08 the only guide, the Court erroneously concludes that it was not violated.

Campbell, the testifying attorney, did not ascend the stand as a "witness" in the true sense of that word. He stood to profit from a favorable outcome of the trial. He used the witness stand as a platform from which to pitch his case to the jury, continuing in his role as an advocate, a role he never relinquished. He never withdrew as Anderson's lawyer in this suit. He was the lawyer principally responsible throughout the case, and for all practical purposes, he was Anderson's only witness at trial. He presented arguments to the jury in the guise of "fact" and "expert" testimony.

At a time when courts should be taking strong measures to restore the public's confidence in lawyers and the legal system, the Court moves in the opposite direction.

I

There are two closely related questions presented in this case. The first is when should a lawyer who seeks to testify be disqualified as counsel. The second is when should counsel be prohibited from testifying. I would hold that an attorney may not appear as a witness to establish an essential fact on behalf of the client, other than attorney's fees or one of the other exceptions set out in Rule 3.08(a),[1] if the attorney or the attorney's firm retains a contingent fee interest in the case. *See* TEX.DISCIPLINARY R.PROF.CONDUCT 3.04(b) (1989).

Further, an attorney who is also an advocate in the case may not testify to matters other than those enumerated in Rule 3.08(a)(1) through (4) if opposing counsel was not promptly notified that the attorney expected to testify or where there was no showing that the testifying lawyer's client would suffer a substantial hardship. Stated more simply, the consequence of the failure to notify opposing counsel promptly or to demonstrate that the substance of the lawyer's testimony could not reasonably be obtained from any other source is that the lawyer is not permitted to testify, or the lawyer and the lawyer's firm are disqualified.

---

1. Those matters are:
   (1) the testimony relates to an uncontested issue;
   (2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;
   (3) the testimony relates to the nature and value of legal services rendered in the case;
   (4) the lawyer is a party to the action and is appearing pro se.

   TEX.DISCIPLINARY R.PROF.CONDUCT 3.08(a)(1)–(4) (1994), *reprinted in* TEX.GOV'T CODE, tit. 2, subtit. G app. A (STATE BAR RULES art. X, § 9).

I agree with the Court that Koch did not preserve its argument that Campbell's firm should have been disqualified, but that does not obviate the need for reversal in this case. Campbell and his firm retained a contingency fee interest. On retrial, Campbell and his firm may continue to represent Anderson and forego Campbell's testimony, or they may withdraw as counsel, relinquish any contingent fees, and Campbell may testify.

## II

The full flavor of what transpired in this case is not conveyed in the Court's opinion.

Campbell had a substantial financial interest in the outcome of the suit against Koch. Under the fee arrangement with Anderson, any award by the jury went first to compensate Campbell and his firm for their hourly attorney's fees in this case, which totalled approximately $119,000 at time of trial. Thereafter, Campbell and his firm would receive a contingency fee of forty percent of any amounts awarded above $119,000. If the suit were unsuccessful, Campbell would receive only the $5,900 he was paid at the outset of the proceedings against Koch.

This suit began as a garnishment action to satisfy a judgment Anderson had obtained against Watson and others (collectively Watson). There is no dispute that, at most, Koch owed Watson $18,728. It was Campbell who conceived the fraud and conspiracy claims. Based on Campbell's testimony, the jury awarded Anderson $164,360 in damages for fraud, $200,000 in damages for conspiracy,[2] $100,000 in exemplary damages, $100,000 for wrongfully paying garnished funds, and attorneys' fees of:

A. Through Trial $1,000,000.00

B. Appealed to the Court of Appeals $2,000,000.00

C. Seeking Writ of Error to the Supreme Court $3,000,000.00

D. Granting Writ to the Supreme Court $4,000,000.00

The trial court disregarded the findings on attorney's fees, however, and entered judgment against Koch for $152,722 in actual damages, $100,000 in exemplary damages, attorney's fees of $119,198, and interest.

Campbell portrayed himself to the jury as the principal lawyer in the case against Koch. In his direct testimony, Campbell first told the jury at some length about his role in the prior suit against Watson. He explained that he was responsible for "putting together" that lawsuit, and that he tried and won it, assisted by his partner Zukowski. Campbell explained that he then filed the writ of garnishment action against Koch and others in an attempt to satisfy the Watson judgment and began conducting discovery and conversing with in-house attorneys for Koch.

Campbell informed the jury that he was the one who concluded that Koch "made it apparent to Mr. Watson that there was a way to beat the system," and that Koch had shown Watson "the tricks of the trade." Campbell told the jury he then filed this lawsuit for fraud and conspiracy against Koch "when I saw what was happening."

Campbell's roles as chief investigator and as chief advocate in the suit against Koch were unmistakable. He closely identified himself with his client Anderson and with his law partner Zukowski, who conducted the questioning of Campbell. For example, Campbell told the jury "they have been playing games with us" in reiterating his belief that Koch was guilty of wrongdoing. He told of his decision to dismiss other defendants from the suit, but not Koch. The clear implication of this testimony was not only that Campbell was in charge, but that Campbell was a thorough investigator and a careful attorney, and that he let the innocent parties out of the suit, pursuing claims only against the real wrongdoers.

Campbell identified document requests he served on Koch and correspondence regarding discovery matters. Campbell proceeded to tell the jury that Koch was not forthcoming in responding to these requests. Campbell repeatedly told the jury that Koch's dilatory tactics in the suit were evidence of the

---

**2.** Because the court of appeals remanded this case for a new trial, Koch has not challenged the findings of fraud and conspiracy in this Court.

conspiracy in which Koch joined to keep Anderson from collecting the judgment against Watson. The discovery matters and Campbell's testimony were admitted into evidence over the objections of Koch and in spite of the fact that there were no motions complaining of delay or noncompliance with discovery requests filed against Koch at any point in the case, much less a finding by the court of dilatory responses.

As the court of appeals pointed out, it was Campbell's testimony that dominated the trial, comprising approximately 403 pages of a total of 578 pages of testimony. Anderson's only other witness was Reese Anderson, the president of Anderson Producing. Reese Anderson's testimony was very brief. He acknowledged that he had no familiarity with the facts surrounding this case, other than the fact that Watson owed him certain amounts of money and that his lawyer Campbell had obtained a judgment against Watson.

The actual evidence upon which Anderson relied in the suit against Koch was almost exclusively documentary. The trial strategy was for Campbell to "identify" the documents (over two hundred of them), even though most of the documents were generated by Koch or other defendants. Campbell was to (and did) comment on their significance as he described them, weaving in assertions of wrongdoing by Koch, while Campbell's partner John Zukowski conducted the questioning. Zukowski summed up his and Campbell's trial strategy in closing arguments to the jury:

> We were not going to have many witnesses that we could put on the witness stand to tell you what happened. And instead of having Mr. Campbell take the stand and just tell you what he saw and what he did and what his conclusions were, what we tried to do is we tried to show you the documents as we talked about them, as we made the conclusions that we saw in the documents. We put them in front of you so that you can see it and make your own conclusions.... You can draw the same conclusions we draw. Now, what conclusions have we drawn?

In sum, Campbell principally did two things from his perch on the witness stand. He funneled extensive commentary and allegations against Koch to the jury, and he made it clear to the jury that he had been intimately involved at every turn in the case as the lawyer for Anderson.

Koch filed two motions before trial commenced seeking to prohibit Campbell from testifying, or alternatively, to disqualify Campbell and his firm. A motion to disqualify was renewed in the middle of Campbell's direct testimony. Koch again urged its complaints in a motion for new trial. Each of these motions was overruled by the trial court.

### III

### A

We should not allow attorneys to do what Campbell and his partner did here: to sign on as counsel, prepare the entire case for trial, and then present the case to the jury through their own testimony.

The Court's ruling could have broad implications. In cases where the facts are largely undisputed or are contained primarily in documents, such as many legal malpractice, bad faith insurance, and deceptive trade practice cases; there would appear to be little impediment to an attorney masterminding and filing the suit, conducting all of the discovery, legal research and pretrial proceedings, then appearing at trial as the "expert" and principal fact witness with questions propounded by his or her law partner. What is wrong with such a practice? The answer should be obvious. As a practical matter, it is difficult for the attorney to separate in his or her own mind the difference between the role of attorney and witness. There is a disincentive to do so where, as here, the attorney will not be paid a fee unless the outcome is favorable to the client. Moreover, any factual knowledge that the testifying lawyer might have is highly likely to be tainted by the overall knowledge he or she possesses about the case and by the fact that the attorney *is an advocate for his or her client*, regardless of whether there is a contingency fee. The roles of advocate and witness are inconsistent

because the function of an advocate is to represent vigorously the interests of the client and that of a witness is to state facts objectively. *Warrilow v. Norrell,* 791 S.W.2d 515, 521 n. 6 (Tex.App.—Corpus Christi 1989, writ denied). *See also* State Bar Rules, art. X, § 9, EC 5–9 (Texas Code of Professional Responsibility) (1984) (repealed effective January 1, 1990).

The same is true regarding expert testimony. An expert witness is one who has scientific, technical, or specialized knowledge that will assist the trier of fact. TEX.R.CIV.EVID. 702. Theoretically at least, the testimony of an expert is objective. An expert witness should not also be the advocate.

The Court's decision is directly at odds with what we did in *Mauze v. Curry,* 861 S.W.2d 869 (Tex.1993). We summarily disqualified a lawyer for submitting his own affidavit as an expert witness in support of a response to a motion for summary judgment. *Mauze,* 861 S.W.2d at 870. Thus, in *Mauze,* even testimony by affidavit in a pretrial proceeding before the court was grounds for disqualification. We relied on Rule 3.08. *Id.* We held that because the lawyer's testimony did not come within any of the five exceptions enumerated in that rule, he should have been disqualified. *Id.* at 870. We relied on *Warrilow v. Norrell,* 791 S.W.2d 515, 523 (Tex.App.—Corpus Christi 1989, writ denied), pointing to the pages in that opinion that identified the problems presented when an attorney ascends the witness stand, including "a broader concern for public confidence in the administration of justice—'justice must satisfy the appearance of justice,'" and the condemnation of attorneys furnishing the controlling testimony for their client. *Mauze,* 861 S.W.2d at 870. Accordingly, the attorney in *Mauze* was disqualified from participating *even in pretrial motions. Id.*

### B

The Court's decision today adopts a very restrictive reading of Rule 3.08 as the sole standard for disqualification. Such a standard will not always be a workable one, as exemplified in this case. Rule 3.08 is designed 1) to insure that a client's case is not

compromised by having the lawyer continue the representation when he or she would be a more effective witness by withdrawing, and 2) to insure that the client is not burdened by counsel whose testimony is adverse to the client. *See* TEX.DISCIPLINARY R.PROF.CONDUCT 3.08 cmt. 9 (1994). Rule 3.08 is not designed to address the broader issue of public confidence in the legal system. To give an example of the difference in focus between disciplinary proceedings under Rule 3.08 and disqualification proceedings, it is material in a disciplinary proceeding to know if the client consented to the lawyer's dual role as advocate and witness. The client's consent is *not* material in a disqualification proceeding. Whether the client agreed that his lawyer should testify does nothing to alleviate the public policy concerns inherent in trial counsel testimony.

This case also demonstrates that in disqualification cases, other rules of procedure and of attorney conduct must be consulted to insure that the process is not tainted. One of these is Rule 3.04(b) of the Texas Disciplinary Rules of Professional Conduct, which prohibits an attorney from acquiescing in the compensation of a witness contingent upon the outcome of the case. There can be no question that Campbell violated this disciplinary rule. It is doubtful whether a lawyer who has a financial interest contingent on the outcome of the case can ever testify as to matters other than those listed in Rule 3.08(a)(1) through (4) [3] and comply with Rule 3.04. The Court observes that the contingency fee issue was not raised by Koch, but a violation of this nature should not be sanctioned by any court, objection or no.

### C

The Court tells us that Rule 3.08 is grounded on two concerns: that the finder of fact may become confused, and that the opposing party may be handicapped in challenging the credibility of a testifying lawyer. 929 S.W.2d at 422. However, the rationale for prohibiting a testifying lawyer from continuing to represent the client in that proceeding is grounded on much more than

**3.** *See supra* note 1.

these considerations. If we condone what Campbell and his firm have done in this case, the legal process itself will only become more suspect in the eyes of the public. Even if the testifying attorney gives truthful, objective testimony, there is the concern in the mind of the public that the testimony is slanted or false.

The debate over whether a lawyer in a proceeding may testify is a long-lived one, as our Court observed in *Ayres v. Canales,* 790 S.W.2d 554, 556 n. 1 (Tex.1990). (For a detailed history of the advocate-witness rule, see Note, *The Advocate–Witness Rule: If Z, Then X. But Why?,* 52 N.Y.U.L.REV. 1365, 1368–84 (1977).) Until recent years, lawyers generally were not permitted to testify as to material, disputed matters and continue to represent the client. The adoption of Rule 3.08 and a similar change in the ABA model rules reflect a new, more relaxed standard. MODEL RULES OF PROFESSIONAL CONDUCT Rule 3.7 (1995).

One impetus behind the relaxation of the former standard was criticism by some commentators who gave little credence to public policy considerations when a lawyer seeks to testify; those commentators dismissed public policy concerns as unpersuasive. *See, e.g.,* Wise, *The Lawyer–Witness Rule: A Comparison of a Lawyer's Ability to Be Both A Witness and an Advocate Under the Texas Code of Professional Responsibility and the Texas Disciplinary Rules of Professional Conduct,* 31 S.TEX.L.REV. 651, 660 n. 28 (1990). *See also International Elecs. Corp. v. Flanzer,* 527 F.2d 1288, 1294 (2d Cir.1975); Enker, *The Rationale of the Rule that Forbids a Lawyer To Be Advocate and Witness in the Same Case,* 1977 AM.B.FOUND.RES.J. 455, 458–59 (challenging some, but not all, public policy considerations); Note, *supra,* at 1384–99.

However, time has shown us that the public has indeed lost confidence in our legal system, and we should rethink rules such as Rule 3.08, particularly where they may be used as the standard of attorney conduct in a civil case. The lawyer-witness rule has a place in our jurisprudence:

> Despite its inevitable unfairness in some situations, the advocate-witness rule is a

necessary restriction on the legal profession. In these times of increasing suspicion of lawyers, any possibility of distrust should be avoided. The rule is an attempt to do so. To eliminate it or even to alter it substantially at this time would severely hamper the legal system as a whole.

Poteat, Note, *Disqualification of Counsel Under the Advocate–Witness Rule: Fair or Futile?,* 48 U.CIN.L.REV. 794, 808 (1979). *See also* Enker, *supra,* at 464. If an attorney combines the role of witness and advocate, "the assessment of his integrity and credibility in evaluating his testimony would likely affect the evaluation of his argument." Enker, *supra,* at 463. The trial would turn on whose lawyer was the most believable. "[T]he argument would be judged in an improper frame of reference." *Id.* at 464.

The Court concludes that allowing a lawyer to testify does not contribute to the loss of public confidence in our legal system to "any measurable extent." 929 S.W.2d at 425. While I would be among the first to concede that disqualifying lawyers in cases such as this will not, in and of itself, restore confidence in lawyers or our legal system, it is a necessary step.

The concern about public confidence in our system of justice was one of the bases for disqualifying the testifying lawyer in *Warrilow,* 791 S.W.2d at 523, cited with approval by this Court in *Mauze,* 861 S.W.2d at 870, and again in today's decision, 929 S.W.2d at 421. In *Warrilow,* the issue was whether an insurance company had acted in bad faith in denying coverage in connection with a hunting accident that resulted in the death of one of the hunters. 791 S.W.2d at 517–18. The lawyer for the insured participated as trial counsel and testified as an expert witness based upon his experience as a hunter and as a former insurance claims adjuster. *Id.* at 522. The court of appeals held:

> "[T]he preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount ..." and "[The client's recognizably important right to counsel of his choice] must yield, however, to considerations of ethics which run to the very integrity of the judicial process."

791 S.W.2d at 523 (quoting *United Pac. Ins. Co. v. Zardenetta*, 661 S.W.2d 244, 248 (Tex. App.—San Antonio 1983, orig. proceeding) (citing *Hull v. Celanese Corp.*, 513 F.2d 568, 572 (2d Cir.1975))).

The court in *Warrilow* further observed that:

> "The practice of attorneys furnishing from their own lips and on their own oaths the controlling testimony for their client is one not to be condoned by judicial silence * * * nothing short of actual corruption can more surely discredit the profession."

*Id.* (citing *Ferraro v. Taylor*, 197 Minn. 5, 265 N.W. 829, 833 (1936)).

The court in *Warrilow* found the testifying attorney's conduct particularly intolerable where he failed to show that there were no other experts with knowledge in the relevant area. *Id.* In the case against Koch, Campbell offered his purported expert opinions as to what oil companies did and did not do in paying interest owners. There was no showing that this "expert knowledge" was unique to Campbell.

Rule 3.08 was not designed to take these considerations into account, and thus has a number of shortcomings as the sole standard for disqualification. If the rule has been violated or will be violated, disqualification is appropriate. *See Ayres*, 790 S.W.2d at 556 n. 2. But that should not be the end of the inquiry.

### D

The Court insists that our prior decisions have relied on Rule 3.08 [4] as the only benchmark by which the question of disqualification should be judged. 929 S.W.2d at 421. Our decisions do not bear this out. Further, comment 9 to Rule 3.08 expressly discourages use of the rule for that purpose.[5]

We confirmed that Rule 3.08 is not well-suited as a procedural rule of disqualification in *Ayres*, although it may be used to furnish some guidance. 790 S.W.2d at 556–57 n. 2. *See also* TEX.DISCIPLINARY R.PROF.CONDUCT 3.08 cmt. 10 (1994). We ultimately concluded in *Ayres* that a party seeking disqualification should demonstrate actual prejudice or some "other compelling basis" for removing the attorney from the case. 790 S.W.2d at 558.

In *Ayres*, the matter to be tried was whether there was an oral referral fee agreement between two attorneys. *Id.* at 555. Ayres contested the existence of the agreement. *Id.* He and his law firm were parties to the suit, and it was alleged by the other party to the suit that one of Ayres's partners was a material witness. *Id.* The Court refused to disqualify Ayres, his partner, or their firm from participating in depositions and the trial, "given the distinct facts of this case." *Id.* at 557–58. The decision was partially grounded on Texas Rule of Civil Procedure 7, which entitled Ayres to represent himself. *Id.* at 557. The Court further declined to apply Rule 3.08 "mechanically," but cautioned that this decision did not foreclose the possibility that a different result would be warranted under different facts. *Id.* at 558 & n. 6.

With all due respect, the quote from *Ayres* relied on by the Court for the proposition that we applied Rule 3.08 as the sole standard for disqualification, 929 S.W.2d at 421, is taken out of context. We said in *Ayres* that the rule is not well-suited as a procedural rule of disqualification, but that it would be appropriate for a trial court to disqualify an attorney in order to prevent a violation of Rule 3.08. 790 S.W.2d at 556 n. 2. It is then that we said, "Indeed, it would be injudicious

---

**4.** At the time this case was tried, the version of Rule 3.08, adopted effective January 1, 1990, was in effect. Rule 3.08 was amended effective October 1, 1994.

**5.** Comment 9 to former and current Rule 3.08 provides:

> Rule 3.08 sets out a disciplinary standard and is not well suited to use as a standard for procedural disqualification. As a disciplinary rule it serves two principal purposes. The first is to insure that a client's case is not compro-

mised by being represented by a lawyer who could be a more effective witness for the client by not also serving as an advocate. See paragraph (a). The second is to insure that a client is not burdened by counsel who may have to offer testimony that is substantially adverse to the client's cause. See paragraph (b).

TEX.DISCIPLINARY R.PROF.CONDUCT 3.08 cmt. 9 (1994); TEX.DISCIPLINARY R.PROF.CONDUCT 3.08 cmt. 9 (1990).

for this court to employ a rule of disqualification that could not be reconciled with the Texas Rules of Professional Conduct." *Id.* at 557 n. 2. We clearly meant that where there was a violation, the lawyer should be disqualified, and that in other situations, the rule serves as a guide. Immediately following the quoted sentence, we said once again that we will refer to the rule "for guidance." *Id.* We went on to hold that the rule did not apply to Ayres because he was an attorney representing *himself* at trial. *Id.* at 557.

We again confirmed in *Spears v. Fourth Court of Appeals,* 797 S.W.2d 654 (Tex.1990), that the disciplinary rules are *minimum* standards below which the conduct of the lawyer may not fall without being subjected to disciplinary action, but that the disciplinary rules "are not controlling as standards governing motions to disqualify...." 797 S.W.2d at 656. Citing *Ayres,* we said the rules are only "guidelines that articulate considerations relevant to the merits of such motions." *Id.* In *Spears* we looked at whether the party seeking disqualification could "demonstrate actual prejudice." *Id.* at 658 (noting again that Rule 3.08 *is not the standard* but that it *may* provide guidance).

Yet, in the face of what we said in *Ayres* and *Spears,* the Court adopts a strict interpretation of Rule 3.08 as the measure in this case and expressly "decline[s]" to apply any other standard. 929 S.W.2d at 422. The Court then proceeds to "analyze the present case under the dictates of Rule 3.08." *Id.*

The Court's refusal to look beyond a strict reading of Rule 3.08 also seems to be at odds with what we did in *Mauze.* In *Mauze,* the lawyer was disqualified from performing any function as an advocate, including participation in pretrial proceedings. 861 S.W.2d at 870. Otherwise, disqualification would have been a somewhat hollow remedy.

### E

As another justification for applying only a restrictive reading of Rule 3.08 to the facts of this case, the Court asserts that Koch relied solely on this rule as the "controlling standard." 929 S.W.2d at 422. The Court allows as how it might otherwise apply "a different standard." *Id.* at 424.

First, it is important to note that at the time this case was tried, Rule 3.08 did not turn on whether the testifying lawyer was also an "advocate." Former Rule 3.08 directed that a lawyer "shall not accept or continue employment in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact...."[6] Campbell continued in the employment of Anderson and testified at trial in violation of the Rule.

Second, Koch's efforts to disqualify Campbell as a witness were not limited to a technical reading of Rule 3.08. Koch made its objections and the bases for its objections plain to the trial court and to the court of appeals. In Koch's first "Motion to Disqualify Counsel or Strike Witnesses," Koch stated that Anderson's counsel failed to "fall within the *guidelines*" set forth in Rule 3.08. In that same motion, Koch also asked:

> If Plaintiff's counsel continues to act as a lawyer in this case, then Defendant requests that Plaintiff's counsel be prohibited from testifying to any matter other than routine attorneys' fees.

In Koch's second motion to disqualify and to strike testimony, it urged wholly apart from Rule 3.08 that:

> The case of *Warrilow v. Norrell,* 791 S.W.2d 515 (Tex.App.—Corpus Christi 1989, no writ) clearly prohibits what Plaintiff and its counsel are attempting to do in this case. In that case, the plaintiff's lawyer testified as a material fact witness and as an expert witness and the Court held that the trial court abused its discretion by failing to disqualify that lawyer and specifically disapproved of such dual roles. Plaintiff incorrectly cited the case of *Ayres*

---

**6.** Rule 3.08 was amended in 1994 to insert the words "as an advocate":

(a) A lawyer shall not accept or continue employment *as an advocate* before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact....

Tex.Disciplinary R.Prof.Conduct 3.08 (1994) (emphasis added).

*v. Canales,* 790 S.W.2d 554 (Tex.1990) as authority supporting that Plaintiff's counsel may act as both lawyer and witness. This case does not apply as it involved a lawyer's right to appear pro se in an action in which he is a party. *Id.* at 556 and 557.

Koch again asked in the *alternative:*

> Further and alternatively, Garnishee Koch respectfully requests that this Court strike any testimony to be given by Mr. Campbell or Mr. Zukowski in this case, or disqualify each or both of them and their firm from serving as counsel for Plaintiff when they also serve as fact or expert witnesses.

After the verdict, Koch's motion for new trial complained of the trial court's failure to either disqualify counsel or *strike witnesses,* citing Rule 3.08 *and Warrilow v. Norrell. Warrilow* contains an extensive discussion of public policy reasons prohibiting lawyers from testifying, as set out earlier in this opinion.

Nor did Koch rely solely on a restrictive reading of Rule 3.08 in its briefing to the court of appeals. Koch's point of error in that court regarding Campbell's testimony was not limited to and indeed did not cite Rule 3.08.[7] Koch complained of the trial court's failure to grant its motion to disqualify counsel or to strike Campbell as a witness, and of the failure to grant a new trial. Koch discussed our decision in *Mauze* extensively in its brief to the court of appeals. Until today's decision, we had never interpreted Rule 3.08 to allow a lawyer to prepare the case for trial, to continue as attorney of record, and to testify as the chief witness at trial. To the contrary, we had broadly applied Rule 3.08 in *Mauze.* 861 S.W.2d at 870. Koch also relied heavily on the rationale of *Warrilow* in its briefing to the court of appeals, devoting three pages of its brief to that topic. Koch made it absolutely clear to the court of appeals why the testimony of Campbell prejudiced it and why Campbell

should not have been allowed to testify as an "expert." Koch prevailed in the court of appeals and therefore had no reason to urge this Court to take any additional action. The Court's characterization of what Koch contended in the trial court and court of appeals is hypertechnical, to say the least.

If we apply the principles we applied in *Mauze,* and those in *Warrilow,* we must uphold the decision of the court of appeals and send this case back for a new trial. Koch did all that was required. We are also departing from our precedents by restricting our analysis of this case to a narrow application of Rule 3.08 under the theory that the parties did not precisely articulate the standard we might otherwise apply. The Court's hands are not tied because the parties failed to articulate the precise standard the Court ultimately adopts. *See Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10 (Tex.1994).

### IV

The cornerstone of the Court's decision is its conclusion that Campbell was not an "advocate" within the meaning of Rule 3.08. Setting aside the fact that the rule in effect at the time this case was tried did not turn on whether the attorney continued to function as an advocate, there can be no serious contention that in the eyes of the jury, Campbell was an advocate for Anderson. He told them repeatedly that he was.

The Court diminishes the fact that Campbell was seated at counsel table when he was not on the stand, concluding Koch waived any harm by failing to object. 929 S.W.2d at 423–424. Once again, the Court refuses to step back and take a look at the big picture of what happened in this case. The Court segments the case and views those segments in isolation, attempting to justify or at least to excuse what occurred. In so doing, the Court continually misses the point. In the minds of the jury and in reality, Campbell was an attorney in the case and an advocate.

---

**7.** The point of error in the court of appeals was as follows:

> The trial court erred in overruling Koch's Motion to Disqualify Counsel or Strike Witnesses, Motion to Compel Discovery and/or Motion to Disqualify Counsel and/or Strike Testimony (Tr.

199), and Motion for New Trial (Tr. 376) because Anderson's attorney performed the dual roles of advocate and witness during trial. The trial court further erred in permitting K. Ray Campbell to testify to matters as to which there was no showing of personal knowledge. (S.F. VI: 177).

As to the lack of objection to Campbell sitting at counsel table, a review of the record is in order. Koch filed three motions to disqualify Campbell and his firm *as counsel in the case.* All were denied. Campbell continued as counsel of record, as the Court acknowledges and approves. 929 S.W.2d at 423–424. Campbell's name appeared on all pleadings in the trial court. Even after trial, the motion to enter judgment on the verdict, to name one pleading, lists Campbell as counsel. Just before trial, Campbell merely ceased for a short time to be the lawyer who actually signed the pleadings. Campbell remained one of the two counsel of record. Koch had little basis for objecting to a counsel of record sitting at counsel table when Koch's numerous motions to disqualify had been denied and Campbell was allowed to testify without any limitations.

Almost as an afterthought, the Court notes that Koch did not attempt to invoke Rule 267 of the Rules of Civil Procedure to exclude Campbell from the courtroom. 929 S.W.2d at 423. Campbell was counsel of record. He was not subject to the Rule. Furthermore, it is difficult to see how this would have cured the fact that Campbell was an advocate in the case and the jury knew it.

The opinion of the court of appeals dealt head on with the notion that the Rule should have been invoked. Indeed, the court of appeals summed up the real problem in this case:

> What could be more prejudicial to an opposing party than the substantive testimony of a lawyer, as an expert witness, having full and detailed knowledge of all related matters, all discovery, all potential testimony, having been responsible or partially responsible for the "creation of the case?" We submit that seldom, if ever, does a non-lawyer witness, fact or expert, possess or have accessible, such full and complete knowledge of a case. In this scenario, even Rule 267 TEX. R.CIV.P. (placing the witness under the rule) provides no meaningful nor intended protection to the party opponent.

883 S.W.2d at 789.

## V

In April of 1991, nineteen months before trial, Campbell concluded he should be a witness. Because he continued in the case as an advocate, he was obligated under the former Rule 3.08(a)(5), and would be obligated under the present Rule 3.08(a)(5), to notify opposing counsel. Campbell did not do this. The obligation to identify witnesses in response to discovery requests does not supplant the requirement of notice under Rule 3.08. The fact that Anderson's interrogatory responses were timely is irrelevant.

The court of appeals did not err when it concluded Campbell should have been disqualified or that Campbell's testimony should have been limited to the value of legal services rendered. The judgment of the court of appeals should be affirmed.