**In re Rayne BAHN.**

**No. 2–99–388–CV.**

Court of Appeals of Texas, Fort Worth.

March 3, 2000.

---

Steven H. Phelps, Dallas, Marguerite Broussard, Plano, for relator.

Jennifer G. Jackson, Locke, Liddell & Sapp, L.L.P., Dallas, Charles W. Rhodes, Locke, Liddell & Sapp, L.L.P., Austin, for real parties in interest.

PANEL B: DAY, LIVINGSTON, and RICHARDS, JJ.

## OPINION

SAM J. DAY, Justice.

### I. INTRODUCTION

Relator Rayne Bahn filed his petition for writ of mandamus on the grounds that the trial court abused its discretion in entering orders disqualifying his attorneys from representing him both at trial and in pretrial matters. We will conditionally grant relator's petition for writ of mandamus as to that portion of the order disqualifying Steven Phelps ("Phelps") from pretrial representation and as to the order disqualifying Marguerite Broussard ("Broussard"). Otherwise, we will deny the petition.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Relator retained Phelps and his law firm to represent him against real-party-in-interest Jay Taylor, P.C. ("Taylor") in prosecuting claims arising under state and federal debt collection statutes. Before suit was filed by relator, Phelps contacted a collector for Taylor on December 9, 1997, and Taylor's collector allegedly committed several violations of state and federal laws while on the telephone with Phelps. As a result, Phelps gained personal knowledge of facts that would be the basis of relator's lawsuit. Phelps filed relator's lawsuit on June 22, 1998.

Relator was also sued by real-party-in-interest Columbus Bank & Trust T/A AT & T Universal Card ("Columbus") in the justice court on February 10, 1998. Relator filed his answer and counterclaim to that suit and filed a motion to consolidate the two lawsuits in the district court. The trial court granted the motion, and the parties were realigned, making relator the plaintiff and Taylor and Columbus co-defendants.

Phelps served as lead counsel for relator since the beginning of the litigation against real-parties-in-interest. Further, Broussard, a contract attorney with Phelps, filed a notice of appearance listing herself as an attorney of record for relator on March 19, 1999. At no time did Phelps withdraw from representing relator nor did Broussard become designated as lead counsel.

On July 8, 1999, the real-parties-in-interest took Phelps's deposition. During the deposition, Phelps stated that he would testify as a fact witness and represent relator at trial. On August 3, 1999, Taylor filed a motion to disqualify Phelps from representing relator because Phelps's dual role of trial attorney and fact witness would create confusion for the jury. On August 6, 1999, Phelps sent a letter to all real-parties-in-interest informing them that he planned on representing relator at trial and testifying as a witness and that it would cause an undue burden on his client to seek new counsel. Relator also filed a motion to disqualify Taylor's attorney, Jay Taylor, and a motion to strike Taylor's motion due to improper service. The trial court's rulings on relator's motions are not at issue in this mandamus proceeding.

At the hearing on the motions to disqualify, Taylor argued that it was not until Phelps's deposition that he learned that Phelps would "try" relator's lawsuit and that Phelps's testimony would relate to a material issue in the case. Columbus also indicated at the hearing that it had no problems with Broussard representing relator. The trial court granted Taylor and relator's motions and disqualified Phelps and Jay Taylor from all matters of representation related to the lawsuit, both pretrial and trial.[1] Although Taylor's motion requested that Phelps's entire firm, including "contract employees," be disqualified, the court's signed order and ruling at the hearing only disqualified Phelps and Jay

---

1. The trial court's order stated in relevant part that Phelps and Jay Taylor are "not to represent any party in this matter from August 12, 1999, forward other than to assist in locating and securing new counsel for their respective clients and assist in the transition of case files to each party's new counsel, as necessary."

Taylor.[2] Further, Taylor and Columbus only argued at the hearing for Phelps's disqualification and not Broussard's. The order was signed on August 23, 1999.

On September 23, 1999, a hearing was held on a motion to modify order nunc pro tunc filed by Universal Card Services, Corp. "erroneously sued as" Columbus Bank & Trust T/A AT & T Universal Card ("Universal"). Although relator had also filed a motion to show authority to determine whether Universal was a party to the suit who could seek to disqualify Broussard, the trial judge stated that he would not rule on any motions "until I figure out who the attorneys are."

On the motion for nunc pro tunc order, Universal argued that the order on the motion to disqualify Phelps did not accurately reflect the trial court's ruling at the hearing on the motion. Universal claimed that the trial court intended to grant the motion to disqualify in its entirety, including the portion requesting that all members of Phelps's firm be disqualified, which would include Broussard. The trial court agreed with Universal that its intent was to grant the motion in its entirety and to disqualify Phelps's entire firm and granted Universal's motion for nunc pro tunc order, disqualifying Broussard. The court indicated that it was disqualifying Broussard because she had been involved in the lawsuit "from the beginning" and that, at the hearing on the motion to disqualify Phelps, the court believed it was disqualifying all the attorneys for the relator. The nunc pro tunc order was signed September 23, 1999. The issue of Universal's authority to file the motion for nunc pro tunc order was never decided.

Relator filed his petition for writ of mandamus and request for temporary relief with this court on December 16, 1999, over three months after the first order was signed and over two months after the nunc pro tunc order was signed. Universal filed a response to the petition for writ of man-

damus as well as a motion to strike several of relator's appendix documents. Relator also filed a motion to strike Universal's response brief.

### III. THE MOTIONS TO STRIKE

■ Universal filed a motion to strike several exhibits in relator's appendix to his petition because they were not part of the trial court record at the time of the hearings. None of the challenged exhibits in the appendix, except Columbus's responses to relator's interrogatories, requests for admission, and requests for production, were part of the trial court record at the time of the hearings on the motions to disqualify. Thus, we will not consider the exhibits that were not part of the record in this proceeding. See *Simon v. Bridewell*, 950 S.W.2d 439, 441 (Tex.App.—Waco 1997, orig. proceeding); *Intercity Management Corp. v. Chambers*, 820 S.W.2d 811, 813 n. 4 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding [leave denied]).

■ Universal also moves to strike Columbus's responses to relator's interrogatories, requests for admission, and requests for production, which were filed by relator as exhibits in his appendix. Relator argues that Columbus's discovery responses were part of the trial court's record because they were filed as exhibits to relator's response to Columbus's motion for partial summary judgment and as exhibits to relator's motion to show authority. Although these exhibits were part of the trial court's record at the time of the hearings on the motions to disqualify, the record does not reflect that the trial court ever ruled on or considered either the motion for partial summary judgment or the motion to show authority or that the exhibits were ever brought to the court's attention. Thus, there is no evidence that the trial court ever considered the discovery exhibits. We do not expect the trial court to be aware of every document part

---

2. At the hearing, the trial court did not grant relator's motion to disqualify, but Jay Taylor agreed to withdraw. Later, the trial court granted relator's motion in its signed order.

of the record that has never been presented to it. Furthermore, we find no indication that the exhibits were relied on by relator at the hearings on the motion to disqualify. If relator wanted these exhibits considered by the trial court in ruling on the motions to disqualify, then he should have presented them to the court at the hearings. Because the trial court appears to have never considered Columbus's discovery responses, we will not consider them either. We note, however, that our decision on the merits of relator's petition would not be different even if we considered any of the challenged exhibits. We grant Universal's motion to strike.

■ Relator also filed a motion to strike Universal's response on the grounds that Universal is not a party to the lawsuit or a real-party-in-interest. Relator has presented the court with an issue of fact to be decided by the trial court: whether Universal is a party to this case. *See Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 714 (Tex.1990) (orig.proceeding) (stating appellate court has no authority to resolve issues of fact in an original proceeding). Because the trial court has not ruled on the issue, we are not in a position to address the merits of relator's motion. The trial court addressed Universal's motion for nunc pro tunc order, which is part of the basis of relator's petition for writ of mandamus. Because the trial court addressed the merits of the motion, we assume the trial court considered Universal a party to the case for purposes of that motion. Thus, Universal is a real-party-in-interest in this proceeding. We deny relator's motion to strike.

## IV. LACHES

■ Before addressing the merits of relator's petition, we address Universal's argument that relator is not entitled to mandamus relief because he failed to use diligence in filing his petition. Mandamus is an extraordinary remedy, not issued as a matter of right, but at the discretion of the court. *See Rivercenter Assocs. v. Riv-*

*era*, 858 S.W.2d 366, 367 (Tex.1993) (orig.proceeding); *Callahan v. Giles*, 137 Tex. 571, 575, 155 S.W.2d 793, 795 (1941). Although mandamus is not an equitable remedy, its issuance is largely controlled by equitable principles. *See Rivercenter*, 858 S.W.2d at 367; *Callahan*, 137 Tex. at 575, 155 S.W.2d at 795; *see also Industrial Found. of the S. v. Texas Indus. Acc. Bd.*, 540 S.W.2d 668, 674 (Tex.1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977). One such principle is that "[e]quity aids the diligent and not those who slumber on their rights." *Callahan*, 137 Tex. at 576, 155 S.W.2d at 795. The party asserting the affirmative defense of laches must show both an unreasonable delay by the other party in asserting its rights and harm resulting to it because of the delay. *See Sanchez v. Hester*, 911 S.W.2d 173, 175 (Tex.App.—Corpus Christi 1995, orig. proceeding [leave denied] ) (citing *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80 (Tex.1989)).

■ Relator waited over three months from the date that the original order was entered and over two months since the nunc pro tunc order was signed before filing his petition. Although an unexplained delay of over four months in seeking mandamus relief can provide grounds for denying mandamus, the circumstances of this case are different. *See Rivercenter*, 858 S.W.2d at 367–68; *International Awards, Inc. v. Medina*, 900 S.W.2d 934, 935–36 (Tex.App.—Amarillo 1995, orig. proceeding). The relator's petition in this case was filed less than four months after the trial court's order was signed, and it was reasonable for relator to wait until after the court completely settled the disqualification issue before seeking mandamus relief. Under these circumstances, Universal should show both an unreasonable delay by relator in asserting its rights and harm resulting to it because of the delay. *See Sanchez*, 911 S.W.2d at 175. Universal did not show that it was prejudiced by relator's delay, and we do not believe that relator failed to act diligently

by waiting to file the petition under the facts of this case. Thus, we hold that relator was diligent in pursuing mandamus and address the merits of his petition.

## V. STANDARD OF REVIEW

 The granting or denial of a motion to disqualify is reviewable by mandamus. *See National Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 133 (Tex.1996) (orig.proceeding). In deciding whether a writ of mandamus is appropriate, we recognize that mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy at law. *See Republican Party v. Dietz*, 940 S.W.2d 86, 88 (Tex.1997) (orig.proceeding). A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *See Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding).

 With respect to the resolution of factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court unless the relator establishes that the trial court could reasonably have reached only one decision and that the trial court's decision is arbitrary and unreasonable.· *See id.* at 839–40. This burden is a heavy one. *See Canadian Helicopters, Ltd. v. Wittig*, 876 S.W.2d 304, 305 (Tex.1994) (orig.proceeding).

 Our review is much less deferential with respect to a trial court's determination of the legal principles controlling its ruling, because a trial court has no discretion in determining what the law is or in applying the law to the facts. *See Walker*, 827 S.W.2d at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in mandamus. *See id.*

## VI. DISQUALIFICATION OF ATTORNEYS

 The Texas Rules of Professional Conduct provide guidance in determining whether an attorney should be disqualified from representing a party in litigation. *See Henderson v. Floyd*, 891 S.W.2d 252, 253 (Tex.1995) (orig.proceeding). If the parties believe that a higher standard should be applied, they should offer countervailing considerations as to why the disciplinary rules should not be employed. *See Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex.1990) (orig.proceeding); *In re Acevedo*, 956 S.W.2d 770, 773 (Tex.App.—San Antonio 1997, orig. proceeding). Because the parties have not offered any countervailing considerations as to why the disciplinary rules should not be employed in this proceeding, we follow the guidelines of the disciplinary rules in reaching our decision. *See Spears*, 797 S.W.2d at 656.

Rule 3.08 of the rules of professional conduct states:

(a) A lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;

(3) the testimony relates to the nature and value of legal services rendered in the case;

(4) the lawyer is a party to the action and is appearing pro se; or

(5) the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and disqualification of the lawyer would work substantial hardship on the client.

. . . .

(c) Without the client's informed consent, a lawyer may not act as advocate in an adjudicatory proceeding in which another lawyer in the lawyer's firm is prohibited by paragraphs (a) or (b) from serving as advocate. If the lawyer to be called as a witness could not also serve as an advocate under this Rule, that lawyer shall not take an active role before the tribunal in the presentation of the matter.

TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a), (c), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998) (TEX. STATE BAR R. art. X, § 9).

▆▆▆ Disqualification is a severe remedy. *See Spears,* 797 S.W.2d at 656; *NCNB Tex. Nat'l Bank v. Coker,* 765 S.W.2d 398, 400 (Tex.1989) (orig.proceeding). The courts must adhere to an exacting standard when considering motions to disqualify so as to discourage their use as a dilatory trial tactic. *See Spears,* 797 S.W.2d at 656. In order to prevent such misuse of the rule, the trial court should require the party seeking disqualification to demonstrate actual prejudice to itself resulting from the opposing lawyer's service in the dual roles. *See Ayres v. Canales,* 790 S.W.2d 554, 558 (Tex.1990) (orig.proceeding) (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08 cmt. 10).

▆▆▆ Under rule 3.08, the moving party must also present evidence that the testimony of the lawyer is "necessary" and that it goes to an "essential fact" of the nonmovant's case. *See In re A.M.,* 974 S.W.2d 857, 864 (Tex.App.—San Antonio 1998, no pet.); *May v. Crofts,* 868 S.W.2d 397, 399 (Tex.App.—Texarkana 1993, orig. proceeding); *see also Gilbert McClure Enters. v. Burnett,* 735 S.W.2d 309, 311 (Tex.App.—Dallas 1987, orig. proceeding) (stating disqualification is not appropriate under this rule when opposing counsel merely announces his intention to call the attorney as a fact witness; there must be a genuine need for the attorney's testimony that is material to the opponent's

client). Further, if the attorney *promptly* notifies opposing counsel of his dual role and advises him that disqualification would work a substantial hardship on his client, he may serve as counsel. *See Ayres,* 790 S.W.2d at 557; *In re A.M.,* 974 S.W.2d at 864.

▆▆▆ Rule 3.08 does not prohibit the lawyer who may or will be a witness from participating in the preparation of a matter for presentation to a tribunal. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08 cmt. 8. In other words, an attorney who is disqualified from representation at trial can continue to participate in the client's case until trial commences; he may continue to assist in pretrial matters such as drafting pleadings, engaging in settlement negotiations, and assisting in trial strategy. *See Anderson Producing Inc. v. Koch Oil Co.,* 929 S.W.2d 416, 422 (Tex. 1996). To minimize the possibility of unfair prejudice to an opposing party, the rule only prohibits any testifying lawyer who could not serve as an advocate from taking an active role before the tribunal in the presentation of the matter. *See id.*

▆▆▆ Finally, the testifying attorney's law firm can continue to represent the client even though the attorney will testify, as long as the client gives informed consent. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08 cmt. 8; *see also Anderson Producing,* 929 S.W.2d at 424; *Spears,* 797 S.W.2d at 658; *In re Acevedo,* 956 S.W.2d at 774 n. 2. The issue of informed consent is not a matter to be decided by the court at a disqualification hearing, but is a matter to be decided between the client and the attorneys. *See Anderson Producing,* 929 S.W.2d at 424; *see also* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08 cmt.10 ("[A] lawyer should not seek to disqualify an opposing lawyer under this Rule merely because the opposing lawyer's dual roles *may* involve an improper conflict of interest with respect to the opposing lawyer's client, for that is a matter to be resolved between lawyer and client or in a subse-

quent disciplinary proceeding.") (emphasis added).

## A. Disqualification of Phelps

■ Taylor argued at the hearing to disqualify Phelps that Phelps would testify to essential facts of relator's case and that his participation at trial as a fact witness and as trial attorney would cause great confusion for the jury because the jury would not be able to keep the roles separate. Taylor stated that Phelps testified at his deposition regarding the alleged violations of state and federal debt collection statutes committed by Taylor's collector during a phone conversation with Phelps. Taylor also stated that Phelps testified regarding his interpretation of the Federal Debt Collection Practices Act and how Taylor violated the Act according to Phelps's interpretation of it. Taylor argued that Phelps's testimony encompassed essential facts of relator's case. Although relator filed a response to the motion to disqualify claiming that Taylor failed to show that Phelps would be testifying to an essential fact at trial, relator never addressed or challenged Taylor's arguments on this issue at the hearing. Further, relator's amended petition reflects that Phelps obtained essential facts to relator's case during his phone conversation with Taylor's collector. Based on these facts, we believe the trial court could have reasonably concluded that Phelps would testify to an essential fact at trial.

Taylor further argued that Phelps's testimony would cause confusion to the jury in light of the fact that it is coming from the relator's trial counsel and that such confusion would keep the jury from fairly evaluating the case on the merits. Phelps's dual role is exactly the kind of circumstance that the rules of professional conduct seek to prevent:

> Rule 3.08 is grounded principally on the belief that the finder of fact may become confused when one person acts as both advocate and witness. "A witness is required to testify on the basis of per-

sonal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." The rule reflects the concern that an opposing party may be handicapped in challenging the credibility of a testifying attorney.

*Anderson Producing,* 929 S.W.2d at 422 (citations omitted) (quoting TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08 cmt. 4 ("[T]he principal concern over allowing a lawyer to serve as both advocate and witness for a client is the possible confusion that those dual roles could create for the finder of fact.")). Further, the point raised by Taylor is a "compelling basis for disqualification." *Ayres,* 790 S.W.2d at 558. Thus, the trial court could have reasonably concluded that Taylor would have been prejudiced by Phelps's testimony.

■ We note that relator did not ensure Phelps's ability to testify and represent relator by sending a letter to opposing counsel pursuant to rule 3.08(a)(5). *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08 (a)(5). Although the case law supports what appears to be an automatic hardship exception, Phelps did not send the letter to opposing counsel until August 6, 1999, three days after the motion to disqualify was filed. *See Ayres,* 790 S.W.2d at 557; *In re A.M.,* 974 S.W.2d at 864; *see also* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a)(5). Based on this fact, Phelps's notice is surely not "prompt." TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a)(5). Thus, Phelps waited too long to rely on this exception. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08 cmt. 7 (stating one of the purposes of prompt notification is to "prevent[ ] the testifying lawyer from creating a 'substantial hardship,' where none once existed, by virtue of a lengthy representation of the client in the matter at hand").

Relator claims that the real-parties-in-interest waived the right to contest Phelps's representation of relator at trial. *See, e.g., Vaughan v. Walther,* 875 S.W.2d 690, 690 (Tex.1994) (orig.proceeding) ("A party who fails to file its motion to disqualify opposing counsel in a timely manner waives the complaint."). Relator claims the parties should have been aware as early as April 13, 1998, the date that realtor filed his answer to Taylor's original petition, that Phelps would testify in the case and represent relator at trial. At the hearing on the motion to disqualify, Taylor claimed he did not know that Phelps would "try" the case until after Phelps's deposition; Taylor did not state when he became aware that Phelps would be a "witness" in the case. Thus, an issue of fact exists as to when Taylor learned that Phelps would be testifying and trying the case. *See Tenneco Inc. v. Enterprise Prods. Co.,* 925 S.W.2d 640, 643 (Tex.1996) ("Waiver is ordinarily a question of fact."). This court cannot address an issue of fact on mandamus. *See Brady,* 795 S.W.2d at 714; *see also Schwartz v. Jefferson,* 930 S.W.2d 957, 961–62 (Tex.App.—Houston [14th Dist.] 1996, orig. proceeding) (holding issue of fact existed as to when moving party became aware of conflict requiring motion to disqualify attorney; thus, appellate court could not rule on issue on mandamus). We hold that the trial court did not abuse its discretion in disqualifying Phelps from representing relator at trial.[3]

With regard to the disqualification of Phelps from pretrial representation, the Texas Supreme Court in *Anderson Pro-*

*ducing* made it clear that a testifying attorney can participate in pretrial matters. 929 S.W.2d at 422 (ruling appeals court incorrectly reversed judgment of trial court where trial court allowed testifying attorney to participate in pretrial matters). The court stated that the rationales for disqualifying an attorney from trying a case because he will testify "do not apply when the testifying lawyer is merely performing out-of-court functions, such as drafting pleadings or assisting with pretrial strategy." *Id.*

Universal argues, however, that because relator submitted the order on the motion to disqualify, which disqualified Phelps from total representation of relator, that relator should not be entitled to argue that the trial court abused its discretion in striking him entirely. We disagree. It is the trial court's decision to enter an order and not the decision of the parties to the case. A party should not be estopped from challenging a court's order when the party provides to the court a proposed order following what it believes was the court's ruling at the hearing, and the court signs it.[4] We hold that the trial court abused its discretion in disqualifying Phelps from pretrial representation of relator in the case.

## B. Disqualification of Broussard

The Texas Supreme Court has made it clear that disqualification of one member of a firm does not automatically

---

3. Universal argues that the trial court did not abuse its discretion in disqualifying Phelps because the order was based on Phelps's violation of Texas Disciplinary Rule of Professional Conduct 3.04(b). TEX. DISCIPLINARY R. PROF'L CONDUCT 3.04(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998) (TEX. STATE BAR R. art. X, § 9). This argument, however, was never brought up in Taylor's motion to disqualify Phelps and was not addressed at the hearing. This argument was only addressed at the hearing on the motion for nunc pro tunc order, which was filed to correct the order disqualifying Phelps

to reflect that Broussard was also disqualified. Thus, we do not consider this argument in our decision. *See Anderson Producing,* 929 S.W.2d at 425.

4. Based on later statements made by the trial court, relator's decision to submit the order striking Phelps from pretrial representation was reasonable: "And it was my belief at that time I was getting-I was disqualifying all the attorneys for the plaintiff and for Jay Taylor and they had to get other counsel."

disqualify the entire firm.[5] *See Anderson Producing,* 929 S.W.2d at 424; *Spears,* 797 S.W.2d at 658; *see also In re Acevedo,* 956 S.W.2d at 774. Further, whether relator gave informed consent to representation by Broussard is not an issue to be decided by a trial court as a ground for disqualification. *See Anderson Producing,* 929 S.W.2d at 424. Thus, Broussard should not have been disqualified.

Universal argues, however, that if Broussard continues to represent relator and attempts to collect attorney's fees, then by having Phelps testify, Broussard is promising to pay Phelps contingent on the content of his testimony; Phelps is being paid on a contingency fee basis for the attorney's fees expended by him in prosecuting the lawsuit. Universal claims that if the trial court did not disqualify Broussard, then it would have condoned a violation of rule 3.04 of the Texas Rules of Professional Conduct. Rule 3.04 prohibits a lawyer from paying or offering to pay "a witness ... contingent upon the content of the testimony of the witness or the outcome of the case." TEX. DISCIPLINARY R. PROF'L CONDUCT 3.04(b).

In *Anderson Producing,* both the majority and dissent observed that this situation could occur, but the majority did not articulate a standard for disqualification on these grounds because the issue was not raised in the trial court or on appeal. 929 S.W.2d at 425. Writing in dissent, Justice Owen, joined by Justice Hecht, stated:

> It is doubtful whether a lawyer who has a financial interest contingent on the outcome of the case can ever testify as to matters other than those listed in

Rule 3.08(a)(1) through (4) and comply with Rule 3.04. The Court observes that the contingency fee issue was not raised by Koch, but a violation of this nature should not be sanctioned by any court, objection or no.

*Id.* at 430 (footnote omitted).

The rule 3.04 issue in this case, however, was *only* raised at the hearing for the nunc pro tunc order and was not raised in the motion to disqualify Phelps, the motion for nunc pro tunc order, or at the hearing on the motion to disqualify Phelps.[6] The purpose of the motion and order was to correct a clerical error, not to issue a new order on new grounds. *Cf. Quick Line Corp. v. Ward Jackson, Inc.,* 759 S.W.2d 192, 194 (Tex.App.—San Antonio 1988, no writ) ("It is the rule that after a judgment has become final, the trial court may only correct clerical errors by nunc pro tunc judgment and may not correct judicial errors."). At the hearing on the motion to disqualify Phelps, the real-parties-in-interest did not present any grounds supporting the disqualification of Broussard, and they never showed how Broussard's representation of relator would prejudice them. As a matter of fact, Columbus indicated at that hearing that it supported Broussard's representation. Later, Universal "erroneously sued as" Columbus argues that Broussard should also be disqualified.[7] Thus, Universal's motion for nunc pro tunc order appears to be a mere dilatory trial tactic, which should not have been entertained. *See Spears,* 797 S.W.2d at 656.

More importantly, the trial court should have considered less drastic measures be-

---

5. Although Broussard is no longer an employee of Phelps's firm, our analysis is based on the fact that she began representing relator as a contract attorney with Phelps.

6. We note that relator informed the trial court that he had not received a copy of the motion only after the merits of the motion had been argued and after relator had responded. Moreover, relator never specifically objected to the motion being heard. Thus, relator's argument that Universal failed to comply with

Texas Rule of Civil Procedure 21a is waived. *See, e.g., Wyatt v. Furr's Supermarkets, Inc.,* 908 S.W.2d 266, 270 (Tex.App.—El Paso 1995, writ denied).

7. Universal and Columbus were represented by the same attorneys at both hearings, except that Universal was also represented by new lead counsel at the hearing on the motion for nunc pro tunc order.

sides disqualification to avoid possible rule 3.04 violations, such as giving Broussard and Phelps an opportunity to change their method of billing relator. *See Spears,* 797 S.W.2d at 656 ("Disqualification is a severe remedy.... Mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice...."). Thus, we hold the trial court abused its discretion in disqualifying Broussard.

## VII. CONCLUSION

Accordingly, without hearing oral argument, we conditionally grant relator's petition for writ of mandamus on that portion of the trial court's order disqualifying Phelps from pretrial representation of relator. The trial court, however, did not abuse its discretion in disqualifying Phelps from participating as relator's attorney at trial, so we deny relator's petition challenging that portion of the trial court's order. Further, we conditionally grant relator's petition for writ of mandamus on the nunc pro tunc order disqualifying Broussard as attorney representing relator. We are confident the trial court will vacate its orders in accordance with this opinion. We instruct our clerk to issue the writ only if the trial court fails to comply with this opinion.