Petition for Writ of Mandamus Conditionally
Granted and Opinion filed July 1, 2010.

 

In The

Fourteenth
Court of Appeals



NO. 14-10-00464-CV



 

In Re: George E. Guidry, Dwight W. Andrus, III and
Dwight W. Andrus Insurance, Inc., Relators



 



ORIGINAL
PROCEEDING



WRIT OF MANDAMUS



  OPINION

In this mandamus proceeding we must determine whether
the trial court abused its discretion by refusing to disqualify one of several
lawyers representing the plaintiffs on grounds that the lawyer’s participation
in the trial would violate the lawyer-witness rule.  On May 21, 2010, relators George
E. Guidry, Dwight W. Andrus, III and Dwight W. Andrus Insurance, Inc. filed a
petition for writ of mandamus in this court.  See Tex. Gov’t Code Ann.
§22.221 (Vernon 2004); see also Tex. R. App. P. 52.  In the petition,
relators, who are the defendants in the trial court, ask this court to compel
the Honorable Alexandra Smoots-Hogan, presiding judge of the 164th District
Court of Harris County to grant their motion to disqualify Lamont Jefferson as one
of the trial lawyers for the real parties in interest, who are the plaintiffs
in the trial court.  Concluding that the respondent clearly abused her
discretion in denying relators’ motion to disqualify, we conditionally grant
the writ of mandamus.

I.                  
Background

Relators are insurance brokers who obtained insurance
on behalf of the real parties in interest, Environmental Procedures, Inc. d/b/a
Sweco Oilfield Services and Advanced Wirecloth, Inc. (collectively, “Insureds”). 
In 1991, relator Guidry obtained insurance, effective October 1, 1991 through
September 30, 1992, for the Insureds through British-American Insurance Group
Ltd. (“British American”).  The coverage consisted of a commercial general
liability (“CGL”) policy with a limit of $1 million for any one accident or
occurrence and an umbrella policy with a $3.5 million limit for any one
accident or occurrence.  Coverage under the 1991 British American CGL policy
was apportioned among seven insurers, and the responsibility for the coverage
limits under the umbrella policy was shared among twenty-eight insurers.  Guidry
provided the Insureds with cover notes reflecting this coverage.  In 1993 and
1994, Guidry obtained the Insureds’ CGL and umbrella insurance from Lexington
Insurance Company.  Under the terms of the Lexington policies, the limits of
coverage were reduced by the costs of defense.

The Derrick
Litigation

In the summer of 1994, Advanced Wirecloth, Inc.  notified
Guidry that it had been sued by a competitor, Derrick Manufacturing
Corporation, who alleged various patent and trademark violations, as well as
other violations of Texas common law and the Texas Business and Commerce Code. 
Guidry forwarded the information to British American.  In the summer of 1995,
Derrick sued the Insureds and others alleging similar claims regarding the
violation of a second patent.  These lawsuits (“the Derrick Litigation”) were
subsequently consolidated.  The Insureds notified Guidry of the second suit,
which information Guidry forwarded to Lexington.  After initially denying
coverage, in April 1996, Lexington offered to provide defense counsel for the
Insureds under a complete reservation of rights.  The Insureds did not accept
the services of the counsel that Lexington offered to provide at Lexington’s
expense, and continued to pay their retained defense counsel.  In September
2001, a successor in interest to the Insureds paid approximately $15 million to
settle the Derrick Litigation.  By this time, the Insureds had incurred approximately
$17 million in attorneys’ fees in the Derrick Litigation.  Despite various requests
by the Insureds to their insurers for reimbursement of their defense costs, the
Insureds had been reimbursed for less than $695,000 in defense costs when they
settled the Derrick Litigation.  The insurers did not contribute funds to
settle the Derrick Litigation.  

Coverage Counsel
for the Insureds During the Derrick Litigation

Lawyers at the law firm of Haynes and Boone, LLP
served as coverage counsel for the Insureds during the Derrick Litigation. 
Haynes & Boone partner Lamont Jefferson served as primary coverage counsel
for the Insureds from July 1999 through the settlement of the Derrick
Litigation. Jefferson advised the Insureds regarding coverage issues.  On the Insureds’
behalf, Jefferson also sought reimbursement for the costs of the Derrick
Litigation from the insurers.  To this end, Jefferson sent at least a dozen letters
to counsel for the insurers.  On the Insureds’ behalf, Jefferson also entered
into an agreement, effective February 18, 2000, with various insurers tolling
the statute of limitations for any claims that the Insureds might have against
the insurers.  As the settlement agreement for the Derrick Litigation was being
drafted, Jefferson provided advice to the Insureds as to revisions to the
language of the agreement that would help the Insureds pursue claims against
the insurers after settlement of the Derrick Litigation.

The
Coverage Suit

Shortly after the settlement of the Derrick
Litigation, Lexington filed a declaratory judgment action against the Insureds
seeking a coverage determination (the “Coverage Suit”).  The Insureds
counterclaimed alleging coverage and asserting various claims.  Other insurers
were later added to the Coverage Suit.   Jefferson was attorney in charge for
the Insureds in the Coverage Suit.  The Insureds eventually settled the
Coverage Suit.  In total, the Insureds received approximately $17 million from
various insurers.  The Insureds paid Haynes & Boone approximately $8
million in attorney’s fees in the Coverage Suit, and the Insureds paid
approximately $1.5 million in expenses.   

The Broker
Suit

The
Insureds filed suit in the trial court below against relators George E. Guidry,
Dwight W. Andrus, III and Dwight W. Andrus Insurance, Inc. (collectively the
“Brokers”) on August 29, 2003 (the “Broker Suit”).  The Insureds asserted
claims against the Brokers for negligence, gross negligence, negligent
misrepresentation, fraud, breach of fiduciary duty, and violations of article
21.21 of the Texas Insurance Code.  The Insureds also asserted claims under
section 101.201 of the Texas Insurance Code (“Unauthorized Insurance Claims”).  The
Insureds invoked the discovery rule and the doctrine of estoppel.  In the
Broker Suit, the Insureds alleged that the Brokers obtained substandard
insurance for the Insureds from 1991 through 1994.  

The Trial
Court’s Partial Summary Judgment

Based
on their affirmative defense of limitations, the Brokers moved for summary
judgment on the claims governed by the two-year statute of limitations, and the
Insureds filed a response in opposition.  The Insureds have alleged three possible
dates on which the statute of limitations began to run on their claims: (1) the
date on which they settled the Derrick Litigation, (2) the date on which Lexington
sued them for a declaratory judgment regarding coverage, or (3) the date on
which Guidry’s deposition was taken in the Coverage Suit.  All of these dates
fall less than two years before the Insureds sued the Brokers.  The
trial court granted a partial summary judgment dismissing the
Insureds’ claims for negligence, negligent supervision, negligent
misrepresentation, and violations of article 21.21 of the Texas Insurance Code
(collectively the “Two-Year Claims”).  

The 2005
Trial

The
remaining claims proceeded to trial in 2005, before the Honorable Martha Hill
Jamison, then presiding judge of the trial court.  Before the trial, the trial
court granted the Brokers’ motion for leave to designate Lamont Jefferson,
along with many others, as responsible third parties.[1]  The
Brokers also designated Jefferson as a fact witness and deposed him before trial.[2]  

Jefferson’s
Testimony at the 2005 Trial

During
their case in chief at trial, the Insureds called Jefferson as a witness.[3]   Though
the Two-Year Claims were not tried in 2005, the claims that were tried involve
similar legal issues regarding (1) when, through the exercise of reasonable
diligence, the Insureds should have discovered the alleged actionable conduct
of the Brokers, and (2) the reasonableness and necessity of the actions of the
Insureds’ lawyers in the Coverage Suit.  The transcript of Jefferson’s
testimony at the 2005 trial consumes more than 200 pages,[4] almost all
of which is fact-witness testimony about what happened in the Coverage Suit and
the Derrick Litigation.  Jefferson gave specific and significant testimony
regarding (1) the Insureds’ claimed damages in the Broker Suit and (2) when the
Insureds discovered or should have discovered their claims against the Brokers. 


The Results
of the 2005 Trial and the Appeal to this Court

During
trial on the remaining claims, the trial court granted a directed verdict as to
the Insureds’ claims for breach of fiduciary duty.  The jury found that the
Brokers did not commit fraud and that certain insurance policies were
independently procured, which was a defense to the Unauthorized Insurance
Claims.  The trial court rendered a take-nothing judgment against the Insureds,
who appealed to this court.  

On
appeal, this court reversed the trial court’s partial summary judgment based on
a conclusion that most of the summary-judgment evidence submitted by the
Brokers was untimely.  See Environmental Procedures, Inc. v. Guidry, 282
S.W.3d 602, 619–21 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).  This
court remanded the Insureds’ Two-Year Claims to the trial court.  See id.
at 637.  We affirmed the remainder of the judgment.  See id.  This
court’s mandate issued on December 18, 2009.  

The
Insureds’ Lawyers

Throughout the Broker Suit, which is now in its
seventh year, Werner Powers of the Haynes & Boone firm has been the attorney
in charge for the Insureds.  See Tex.
R. App. P. 8. In addition to Powers, several other lawyers at Haynes
& Boone have represented the Insureds:  Alene Levy (appellate counsel),
Christina Crozier, David Ylitalo, Erika Blomquist, and Stett Jacoby.  Jefferson
did not appear as a trial lawyer for the Insureds in the Broker Suit until
March 19, 2010.

The
Insureds’ Amended Petition

On
remand in the trial court, Werner Powers signed an amended petition for the
Insureds that was filed on January 29, 2010.  In this petition, the Insureds
allege that the Brokers’ negligence was the proximate cause of approximately
$90 million in actual damages to the Insureds.[5] 
The Insureds seek not more than $47 million in actual damages as to their negligent-misrepresentation
claim.  The Insureds also seek punitive damages, attorney’s fees, prejudgment
interest, and postjudgment interest.

Status
Conference on Remand

After
remand, the trial court set a status conference for February 19, 2010.  Powers
appeared at this conference on behalf of the Insureds.  At the hearing, the
trial court announced its desire to try the remanded claims (the Two-Year
Claims) quickly, at a trial setting in the summer of 2010 that could not be
changed.  To accommodate the trial court’s goal, the parties agreed to a July
12, 2010 trial setting, and the parties agreed that they did not need further
discovery, except relating to the Insureds’ potential designation of an
additional expert witness.

The
Brokers’ Motion for Summary Judgment on Remand

A
few weeks later, on March 4, 2010, the Brokers filed a motion for summary
judgment based primarily on the two-year statute of limitations, which they
claim bars any recovery by the Insureds on the Two-Year Claims.  As part of their
summary-judgment evidence, the Brokers relied upon Jefferson’s February 11,
2000 letter (the “Jefferson Letter”) to the Insureds in which he advises them that
British American was responsible to pay “all costs of defense, without
regard to policy limits, until the policy limits have been exhausted by either
judgment or settlement.” (emphasis in original).  The Brokers also relied upon
Jefferson’s statement in this letter that Lexington and British American’s
position that they may pay a pro rata share of defense costs is “not
supportable under either Texas or Louisiana law.”  The Brokers also sought
summary judgment regarding a 1991-92 British American insurance policy based on
Jefferson’s testimony at the 2005 trial.    

In their summary-judgment motion, the Brokers
referred to Jefferson by name as a fact witness.  The Brokers asserted that the
Insureds’ Two-Year Claims accrued either when the insurers issued the insurance
policies, or when the Insureds began paying their own defense costs in the Derrick
Litigation, or—at the latest—when they received the Jefferson Letter.  Each of
those occurrences took place more than two years before the Broker Suit was
filed.

Jefferson’s
First Appearance as a Member of the Broker Suit Trial Team 

 Before the Brokers filed their summary-judgment
motion in reliance upon Jefferson’s statements, Jefferson had not served as litigation
counsel for the Insureds in the Broker Suit.  Jefferson appeared as “additional
counsel” on the Insureds’ filings for the first time on March 19, 2010, when the
Insureds filed their response in opposition to the Brokers’ summary-judgment
motion.  Upon receiving the Insureds’ summary-judgment response, counsel for
the Brokers called Jefferson on the phone to inquire about Jefferson’s intended
role.  Counsel for the Brokers also sent a letter to Jefferson, dated March 22,
2010, stating that (1) he is not clear what Jefferson’s intentions are
regarding his role in this case; (2) Jefferson is a material fact witness whom
the Brokers intend to call at trial, if the trial court does not grant summary
judgment; and (3) the Brokers think that Jefferson’s status as a material fact
witness precludes him from serving as a trial lawyer for the Insureds.  On the
same date, counsel for the Brokers sent a letter to the Insureds’ attorney in
charge (Powers) by facsimile, stating that (1) he understood that Jefferson intends
to cover the hearing on March 26, 2010 on the parties’ cross-motions for
summary judgment; (2) Jefferson authored some of the key documents relied upon
in the Brokers’ motion for summary judgment; (3) Jefferson testified on many
substantive issues at the 2005 trial; and (4) the Brokers believe it is
inappropriate for Jefferson to make an appearance as counsel in the Broker Suit.

The
Brokers’ Objection to Jefferson Serving on the Courtroom Team

The Brokers immediately filed a written objection to
Jefferson appearing as litigation counsel for the Insureds in the Broker Suit,
based primarily on the lawyer-witness rule.  See Tex. Disciplinary R. Prof’l
Conduct 3.08(a).  The Brokers stated they recently learned that Jefferson
planned to argue on behalf of the Insureds at the summary-judgment hearing
scheduled for March 26, 2010.  Pointing out that Jefferson testified
extensively as a fact witness at the 2005 trial, the Brokers asserted that,
because Jefferson is a key fact witness, Jefferson’s appearance as an advocate
for the Insureds could be perceived as creating an appearance of impropriety
and should not be allowed.  The Brokers asked that the trial court limit
Jefferson’s role in the Broker Suit to that of a witness and not allow him to
appear as a courtroom advocate in the litigation.  The Brokers did not set this
objection for hearing or obtain a ruling on it at that juncture.

In
the meantime, the Insureds voluntarily allowed that Jefferson would not argue at
the March 26, 2010, summary-judgment hearing on the parties’ cross-motions for
summary judgment, and Jefferson did not argue at this hearing. The trial court
took the Brokers’ motion and the Insureds’ motion under advisement.  To date,
the trial court has not ruled on these pending summary-judgment motions.  

The
Insureds’ Motion to Strike

About
a month after the summary-judgment hearing, the Insureds filed a motion to
strike or overrule the Brokers’ objection to Jefferson’s participation as
additional trial counsel in the Broker Suit.  The Insureds stated that they
sought to promptly resolve whether Jefferson could serve as additional trial
counsel because trial was set for July 12, 2010.  The Insureds argued that the
Brokers’ objection should be stricken for the following reasons: (1) the
Insureds have confirmed that they will not call Jefferson to testify at trial;
(2) Jefferson’s purportedly “key” testimony does not go to “an essential fact”
in the Brokers’ case; (3) Jefferson’s allegedly “key” evidence can be adduced
through sources other than Jefferson; (4) any attempt by the Brokers to call
Jefferson as a witness at trial would be a purely tactical maneuver; (5) the
Brokers have not shown that allowing Jefferson to serve as additional trial
counsel would violate Rule 3.08 of the Texas Disciplinary Rules of Professional
Conduct (“Rule 3.08”); and (6) even if the Brokers had shown a violation of
Rule 3.08, they have not shown that they would suffer actual prejudice from
Jefferson testifying as a fact witness while also serving as one of the
Insureds’ trial lawyers.  

The
Brokers’ Motion to Disqualify Counsel

One
week later, the Brokers filed a motion to disqualify Jefferson from acting as
trial counsel for the Insureds.  In this motion, the Brokers argued that
Jefferson should be disqualified for the following reasons: (1) Jefferson is an
essential witness who gave lengthy deposition testimony in this case and lengthy
trial testimony at the 2005 trial regarding material facts within his personal
knowledge; (2) the Insureds have designated Jefferson as “additional trial
counsel” in order to shield Jefferson from testifying at trial regarding
coverage issues, his handling of the Coverage Suit, and statute-of-limitations
issues; (3) allowing Jefferson to serve as trial counsel would violate
guidelines for disqualification that are based on Rule 3.08; (4) Jefferson’s
trial testimony is necessary to establish essential facts; (5) allowing
Jefferson to serve as both a trial lawyer and a fact witness will cause actual
prejudice to the Brokers by blurring the line in the jurors’ minds between
Jefferson’s legal arguments as counsel and his trial testimony as a fact
witness, potentially inducing the jury to give undue weight to his arguments as
counsel because of his extensive personal knowledge of the facts; (6) though
disqualification is a severe and disfavored remedy because it can harm a party
by depriving the party of its chosen counsel, the Insureds’ chosen counsel has
always been Powers, who remains the Insureds’ attorney in charge; (7) the
Insureds are seeking a tactical advantage by trying to keep Jefferson from
testifying by designating him as additional counsel;[6] and (8) the
exceptions in Rule 3.08(a) do not apply, and disqualifying Jefferson will not
work a substantial hardship on the Insureds.

The Trial
Court’s Ruling Denying Disqualification

On
May 14, 2010, the trial court held a very brief hearing on the Brokers’ motion
to disqualify.  At the hearing, the Insureds lodged various objections against
all of the evidence attached to the Brokers’ motion to disqualify.  The trial
court sustained all of these objections.  After hearing arguments of counsel,
the trial court denied the Brokers’ motion to disqualify.[7]

 

The Mandamus
Petition

On
May 21, 2010, the Brokers filed their petition for writ of mandamus, contending
the trial court abused its discretion by denying their motion to disqualify
Jefferson.  The Brokers also assert that the trial court clearly abused its
discretion by sustaining the Insureds’ objections to all of the attachments to
their disqualification motion.  

II.              
Mandamus Standard
on Motion to Disqualify

Mandamus is appropriate to correct a trial court’s
abuse of discretion in denying a motion to disqualify counsel because there is
no adequate remedy by appeal.  See In re Epic Holdings, Inc., 985 S.W.2d
41, 52–54 (Tex. 1998).  In determining whether mandamus is appropriate, we
focus on whether the trial court abused its discretion.  In re Meador,
968 S.W.2d 346, 350 (Tex. 1998).  In determining whether the trial court
abused its discretion with respect to resolution of factual matters, we may not
substitute our judgment for that of the trial court and may not disturb the
trial court’s decision unless it is shown to be arbitrary and unreasonable.  See
Walker v. Packer, 827 S.W.2d 833, 839–40 (Tex.1992).  A trial court also
abuses its discretion if it fails to analyze or apply the law correctly.  See
id. at 840.

III.           
Analysis

Texas Disciplinary Rule of Professional Conduct 3.08,
entitled “Lawyer as Witness,” provides guidance on the issue of
disqualification.  Rule 3.08 provides:

(a) A lawyer shall not accept or continue employment as an
advocate before a tribunal in a contemplated or pending adjudicatory proceeding
if the lawyer knows or believes that the lawyer is or may be a witness
necessary to establish an essential fact on behalf of the lawyer’s client,
unless:

(1) the testimony relates to an uncontested issue; 

(2) the testimony will relate solely to a matter of
formality and there is no reason to believe that substantial evidence will be
offered in opposition to the testimony; 

(3) the testimony relates to the nature and value of legal
services rendered in the case; 

(4) the lawyer is a party to the action and is appearing
pro se; or 

(5) the lawyer has promptly notified opposing counsel that
the lawyer expects to testify in the matter and disqualification of the lawyer
would work substantial hardship on the client. 

Tex.
Disciplinary R. Prof’l Conduct 3.08(a), reprinted in Tex. Gov’t Code, tit.
2, subtit. G, app. A (Tex. State Bar R. art. X, § 9. (Vernon 2005).

Rule 3.08 is grounded principally on the notion that
the finder of fact may become confused when one person acts as both advocate
and witness.  See Tex. Disciplinary R. Prof’l Conduct 3.08 cmt. 4; Anderson
Producing, Inc. v. Koch Oil Co., 929 S.W.2d 416, 422 (Tex. 1996). “A
witness is required to testify on the basis of personal knowledge, while an
advocate is expected to explain and comment on evidence given by others.  It
may not be clear whether a statement by an advocate-witness should be taken as
proof or as an analysis of the proof.” Tex. Disciplinary R. Prof’l Conduct 3.08
cmt. 4.  The rule reflects the concern that an opposing party may be
handicapped in challenging the credibility of a testifying lawyer.  Anderson,
929 S.W.2d at 416.  Other possible justifications for the rule include:  (1) a testifying lawyer may be a less effective witness
because he is more easily impeachable for interest; (2) a lawyer-witness may
have to argue his own credibility; (3) while the role of a witness is to
objectively relate facts, the role of an advocate is to advance his client’s
cause; and (4) an appearance of impropriety may be created when a lawyer
testifies on behalf of his client.  See F.D.I.C. v. U.S. Fire
Ins. Co., 50 F.3d 1304, 1311 (5th Cir. 1995).  

The Supreme Court of Texas has said that “‘[d]isqualification
is a severe remedy.’”  In re Sanders, 153 S.W.3d 54, 57 (Tex. 2004)
(quoting Spears v. Fourth Court of Appeals, 797 S.W.2d 654, 656 (Tex.
1990)).  Disqualification is a measure that can cause immediate harm by
depriving a party of its chosen counsel and disrupting court proceedings.  See
id.    Thus, allegations of unethical conduct alone or evidence showing only
a remote possibility of a violation of the disciplinary rules is not enough to
require disqualification.  See id. The fact that a lawyer simultaneously
serves as both an advocate and a witness does not in itself compel
disqualification.  See id.  Disqualification is only appropriate if the
lawyer’s testimony is “necessary to establish an essential fact.”  Tex.
Disciplinary R. Prof’l Conduct 3.08(a); see In re Sanders, 153 S.W.3d at
57.[8]  The party
requesting disqualification must demonstrate that the opposing lawyer’s dual
roles as lawyer and witness will cause the party actual prejudice.  See id. 
Even if a lawyer is disqualified based on the lawyer-witness rule, the lawyer can
still represent the client in that case by performing out-of-court functions in
the case, such as drafting pleadings, assisting with pretrial strategy,
engaging in settlement negotiations, and assisting with trial strategy.  See
Anderson Producing Inc., 929 S.W.2d at 422–23.  

According to the Insureds, the Broker Suit “is a case
brought by the [Insureds] against their insurance brokers (Defendants) for the
placement of substandard insurance with financially unstable and, in some
cases, insolvent insurance carriers.”   If the trial court does not grant
summary judgment, then there may be an issue at trial as to when the Insureds first had knowledge of facts
that would have caused a reasonably prudent person to have made an inquiry that
would have led to the discovery of the Two-Year Claims.  See Fish v. Marsters Co., No. 14-06-00129-CV, 2007 WL 1438555, at *8–9 (Tex.
App.—Houston [14th Dist.] May 17, 2007, pet. denied) (mem. op.).  

From July 1999 through the filing of the Broker Suit,
Jefferson served either as coverage counsel for the Insureds or as attorney in
charge for the Coverage Suit against the insurers on the allegedly substandard
insurance policies.[9] 
During the 2005 trial, Jefferson testified at length as a fact witness
regarding these matters.  Among other things, he testified that the first time
he remembers thinking that the Insureds had a claim against the Brokers was
during Guidry’s deposition.  However, when asked if, before the Guidry
deposition, he was aware of any fact that might arouse suspicion regarding the
Brokers’ alleged misconduct, Jefferson testified that there may have been
things that “looking back,” arouse suspicion.[10]  Significantly,
Jefferson was the Insureds’ agent and attorney, and Jefferson’s testimony in
this regard is material to the issue of when the Insureds first had knowledge of facts that would have caused a
reasonably prudent person to have made an inquiry that would have led to the
discovery of the Two-Year Claims.  

Jefferson
testified that the Insureds could have sued Lexington in 1995, 1996, 1997,
1998, 1999, or 2000, but did not do so.  When asked why the Insureds did not
sue the insurers sooner, Jefferson stated there were two reasons: (1) The
Derrick Litigation “was a huge piece of litigation . . . and the client didn’t
want to open up another battlefront”; (2) “probably more importantly . . . we
had two insurance companies who were giving us assurance after assurance that
the money is coming.”  

During Jefferson’s trial testimony, Powers laid a
predicate for his factual inquiries to Jefferson, saying “I want to go back to
some of the — some of the issues that happened in [the Coverage Suit] and who
we sued and what we knew — when we knew it.”  Jefferson sent the Jefferson Letter
to Jim Maroney, General Counsel for the Insureds’ parent company, on February
11, 2000, advising that the insurance companies were taking insupportable
positions on their duty to defend the Derrick Litigation.[11]  In his
testimony under direct examination at the 2005 trial, Jefferson addressed “what
we knew — when we knew it.” (emphasis added).  This crucial knowledge
and testimony goes to the heart of the Brokers’ argument that Jefferson’s
testimony is necessary to establish essential facts relevant to the Brokers’ limitations
defense.

The Insureds assert that Jefferson’s testimony is not
necessary to establish essential facts.  They allege that any evidence
concerning settlement in the Coverage Suit can be presented by representatives
of the Insureds with whom Jefferson communicated or other lawyers who
participated in the Coverage Suit.  With regard to the Jefferson Letter, the
Insureds allege that the letter is the best evidence of its contents and that
the recipient of the letter could testify to its contents.  However, these
other sources of proof would not be able to explain or testify concerning the
facts that Jefferson knew that might have aroused suspicion regarding the
possible existence of the Two-Year Claims.[12] 
In addition, because the Jefferson Letter and the evidence of what Jefferson
knew and when he knew it are crucial elements of the Brokers’ defense, the
Brokers are entitled not only to offer the letter into evidence, but also to
call the author as a witness to furnish testimony concerning the substance of
the letter and his thought processes in preparing it and in filing suit on
behalf of the Insureds.[13]

We conclude that, as a
matter of law, Jefferson’s testimony is necessary to establish an
essential fact and that none of the exceptions listed in Rule 3.08(a) apply.[14]  See U.S.
Fire Ins. Co., 50 F.3d at 1317 (holding that plaintiff’s lawyer was
necessary witness under lawyer-witness rule because lawyer had knowledge of
facts relating to defendant’s defense based on discovery of facts that would
put plaintiff on notice about its loss); Ayus v. Total Renal Care, Inc., 48
F.Supp.2d 714,715–17 (S.D. Tex. 1999) (disqualifying defendant’s  lawyer under
lawyer-witness rule because lawyer had knowledge of material facts based on his
authorship of several letters that were necessary evidence in the case); Dean
Park & Const. & Real Estate Invest. Corp. v. Meredith, Donnell &
Abernathy, No. 13-03-730-CV, 2005 WL 1832046, at *3 (Tex. App.—Corpus
Christi Aug. 4, 2005, no pet.) (mem. op.) (holding that trial court did not err
by concluding that testimony of plaintiff’s lawyer was necessary to establish
essential element of his client’s case); In re Bahn, 13 S.W.3d 865, 874
(Tex. App.—Fort Worth 2000, no pet.) (holding that trial court did not err by
concluding that testimony of plaintiff’s lawyer was necessary to establish
essential element of his client’s case).  

In addition, allowing Jefferson to serve as both a
trial lawyer and a fact witness would cause actual prejudice to the Brokers by
blurring the line in the jurors’ minds between Jefferson’s legal arguments as
counsel and his trial testimony as a fact witness, potentially inducing the
jury to give undue weight to his arguments as counsel because of his extensive
personal knowledge of the facts or because the jury could not recall whether statements
he made during the trial were made from the counsel table or the witness stand. 
If Jefferson were permitted to serve on the Insureds’ courtroom team, the
Brokers would be prejudiced in their ability to obtain Jefferson’s exclusion
from the courtroom under the rule for exclusion of witnesses.  See Anderson
Producing, Inc., 929 S.W.2d at 423 (finding no prejudice when party, among
other things, made no effort to exclude lawyer-witness from the courtroom by
placing him under the rule.).  In denying the motion to disqualify, the trial
court may have determined that allowing Jefferson to occupy dual roles as trial
lawyer and fact witness would not cause the Brokers actual prejudice.  To the
extent that the trial court made this determination, we conclude that the court
clearly abused its discretion.[15]
 See In re Bahn, 13 S.W.3d at 874 (concluding that lawyer’s dual
roles as trial lawyer and fact witness would cause actual prejudice to opposing
party).

The Insureds further claim that the Brokers are
attempting to use Rule 3.08 as a tactical tool to deprive them of their right
to be represented by the lawyer of their choice.[16]  See Tex.
Disciplinary R. Prof’l Conduct 3.08, cmt. 10.  In this case, as the Brokers
point out, throughout the Broker Suit, the Insureds have chosen Powers as their
attorney in charge.  The Insureds have not chosen to replace Powers as attorney
in charge or to designate Jefferson as attorney in charge.  Rather, the
Insureds seek to add Jefferson to their existing six-member litigation team.  Powers
is still the Insureds’ attorney in charge, and disqualifying Jefferson would
not deny the Insureds their choice of Powers as their attorney in charge.  According
to the Insureds, they asked Jefferson to serve as additional trial counsel
“recognizing the pressures created by the fast-track schedule in this complex
case and scheduling conflicts created by Mr. Powers’ busy trial docket.”  Seeking
to disqualify “additional counsel” would not appear to be a tactical tool to
deprive the opposing party of the right to be represented by the “lawyer of his
or her choice.”[17] 
See id.  The important concern for the Insureds’ freedom to choose their
lawyer is less pronounced when the disqualified lawyer is not the attorney in
charge.  While parties have freedom to choose two lawyers or, with leave of
court, more than two lawyers,[18]
the need to defer to a party’s choice of counsel is diminished when the lawyer
in question is merely “additional counsel.” 

Furthermore, Jefferson first appeared as additional
counsel in the Broker Suit late in the litigation, and the Brokers promptly
objected.  In addition, before Jefferson’s first appearance in March 2010, he had
already testified as a fact witness, been designated as a fact witness, and had
his letters and testimony cited in the Brokers’ summary-judgment motion.  Given
these circumstances, there is little, if anything, to suggest that the Brokers
are seeking to disqualify for tactical reasons.

IV.            
Conclusion

Under the applicable standard of review, we conclude
that the respondent clearly abused her discretion in denying the Brokers’
motion to disqualify. We are confident that the respondent will vacate her
order denying the Brokers’ motion to disqualify and will issue an order
disqualifying Lamont Jefferson from serving as trial counsel in the Broker
Suit.[19] 
Only in the event the respondent fails to do so, will the writ issue.  

 

 

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson, Frost, and Seymore.

 

 









[1] Though
Jefferson was designated as a responsible third party, the trial court did not
ask the jury to determine the percentage of responsibility of Jefferson or any
of the others designated as responsible third parties.





[2] The
transcript of Jefferson’s deposition testimony is 159 pages long.  





[3] Though the Insureds had
designated Jefferson as an expert witness regarding the reasonableness and
necessity of their attorney’s fees and costs in the Coverage Suit and the
Derrick Litigation, the Insureds had not designated Jefferson as a fact
witness.  Nevertheless, early in his trial testimony Jefferson began testifying
as a fact witness.  The Brokers objected that Jefferson had not been designated
as a fact witness.  The Insureds responded that the Brokers had designated
Jefferson as a fact witness and had deposed Jefferson “for ten hours.”  The
trial court overruled the Brokers’ objection and gave them a running objection
to the Insureds’ failure to designate Jefferson as a fact witness.

 





[4] In this
testimony, Jefferson never opined as to the reasonableness and necessity of the
attorney’s fees and costs incurred by the Insureds in the Coverage Suit or in
the Derrick Litigation.  





[5]  The
Insureds allege the following actual damages: (1) “unpaid claims of
approximately $35,000,000,” (2) more than $17 million in attorney’s fees from
the Derrick Litigation, (3) more than $8 million in attorney’s fees and costs from
the Coverage Suit, and (4) lost profits of no more than $30 million. 





[6] In their
brief in this court, the Insureds state that they “have informed opposing
counsel and the trial court that Mr. Jefferson will not testify at trial as the
information addressed in his testimony is available from multiple other
sources.”  





[7] The trial
court later signed a written order to the same effect.





[8] In their
petition, the Brokers also argue that Jefferson should be disqualified pursuant
to Texas Disciplinary Rule of Professional Conduct 3.04.  At oral argument, the
Brokers abandoned that contention and advised this court that they did not seek
disqualification on Rule 3.04 grounds.





[9] The trial
court sustained objections to all of the evidence the Brokers submitted with
their motion to disqualify.  The Brokers assert that the trial court clearly
abused its discretion when it sustained these objections.  We agree, and we
consider the evidence submitted by the Brokers. 





[10] When asked by the Insureds’
counsel if until this deposition Jefferson was “aware of any fact that would
even arouse suspicion as to [the Brokers’] misconduct,” Jefferson testified, “I
can’t think of anything in particular, but in hindsight, well, there may
have been a couple of things that might — that, in looking back,
arouses suspicion [sic] or falls within that category.” (emphasis
added).  Jefferson’s counsel then asked Jefferson, “But not at that time?”  To
which Jefferson replied, “No, sir.”  

 





[11] The
Insureds argue that the Jefferson Letter is not relevant to the Brokers’
limitations argument because the Brokers’ primary limitations argument is that
limitations started to run in 1993, 1994, or 1995.  However, parties are
allowed to make arguments in the alternative, and the Brokers base one of their
alternative limitations arguments on the Jefferson Letter. 





[12] The
Insureds cite In re B.L.H. See No. 01-06-00817-CV, 2008 WL 864072, at
*3–5 (Tex. App.—Houston [1st Dist.] Mar. 27, 2008, no pet.) (mem. op.).  In
that case, the party moving for disqualification did not establish that the
lawyer’s testimony was necessary to establish an essential fact, and the motion
to disqualify was filed on the night before the first day of trial.  See id. 
The B.L.H. case is not on point.





[13] In a post-submission letter, the Insureds filed the
Brokers’ latest designation of witnesses emphasizing that several witnesses
were listed who could testify with regard to the accrual of their cause of
action.  Those witnesses, however, cannot testify regarding (1) the facts that
Jefferson knew that might have aroused suspicion regarding the possible
existence of the Two-Year Claims, or (2) Jefferson’s understanding of the facts
or knowledge of insurance law that affected Jefferson’s thought process and
conclusions when he advised his clients to settle the Coverage Suit and
prosecute claims against the Brokers.





[14] The Insureds argue that the exception in Rule
3.08(a)(5) applies.  For that exception to apply, Jefferson must have promptly
notified opposing counsel that Jefferson expects to testify at trial.  See
Tex. Disciplinary R. Prof’l Conduct 3.08(a) (5).  Jefferson has not given this
notification; therefore, this exception does not apply. See In re Bahn,
13 S.W.3d at 874.  Even if this notification had been given, there is no
evidence that disqualification would work a substantial hardship on the
Insureds.  Powers has been attorney in charge for the Insureds from August 29,
2003 to the present.  Jefferson made his first appearance as counsel in the
Broker Suit on March 19, 2010, and that appearance was as additional litigation
counsel.

 





[15] The Insureds
cite this court’s opinion in Schwartz v. Jefferson.  See 930
S.W.2d 957, 960–61 (Tex. App.—Houston [14th Dist.] 1996, orig. proceeding). 
The Schwartz court did not have the benefit of the legal standard
adopted by the Supreme Court of Texas in In re Sanders.  See 153 S.W.3d
at 56–57.  In addition, as noted by the Insureds, the party seeking
disqualification in Schwartz did not show that the lawyer’s testimony
was necessary to establish an essential fact.  See Schwartz, 930 S.W.2d
960–61.  If the Schwartz movant had shown that the lawyer’s testimony
was necessary for the movant to establish an essential fact, then, under In
re Sanders, the movant would have to show actual prejudice from opposing
counsel’s service as both trial counsel and a necessary witness.  See In re
Sanders, 53 S.W.3d at 57.  The fact that the nonmovant is not calling the
lawyer to testify at trial would not be relevant to such an analysis.  See
id.  The Schwartz case is not on point.





[16] The Insureds also suggest that, though the Brokers
only sought to disqualify Jefferson, their eventual goal is to disqualify the
entire Haynes & Boone firm in the future.  However, the record reflects
that Haynes & Boone has obtained the clients’ informed consent as to some
Rule 3.08 issues, and with the Insureds’ informed consent, nothing in Rule 3.08
would preclude Haynes & Boone from continuing to represent the Insureds
even if Jefferson is disqualified from serving as one of their trial lawyers. 
See Tex. Disciplinary R. Prof’l Conduct 3.08(c); Anderson Producing Inc.,
929 S.W.2d at 424.  





[17] At oral
argument Jefferson acknowledged that he had not been designated as attorney in
charge for the Insureds.





[18]
See Tex. R. Civ. P. 9 (“Not more
than two counsel on each side shall be heard on any question or on the trial,
except in important cases, and upon special leave of the court.”).

 





[19] A lawyer disqualified under the lawyer-witness rule is
still free to represent the client in that case by performing out-of-court
functions, such as drafting pleadings, assisting with pretrial strategy,
engaging in settlement negotiations, and assisting with trial strategy.  See
Anderson Producing Inc., 929 S.W.2d at 422–23.